COMMONWEALTH *vs.* ALBERT M. McCORMICK.

No. 98-P-1239.

Bristol. April 8, 1999. - October 19, 1999.

Present: LAURENCE, SMITH, & LENK, JJ.

*Indecent Assault and Battery. Practice, Criminal,* Record, Assistance of
counsel, Instructions to jury. *Evidence,* Fresh complaint, Spontaneous utter-
ance, Credibility of witness. *Witness,* Credibility.

The record presented on appeal from a conviction of assault and battery on a
child under the age of fourteen was insufficient for this court to make a
determination whether the defendant's trial counsel's failure to request
limiting instructions with respect to complaint testimony created a
substantial risk of a miscarriage of justice and deprived the defendant of
the effective assistance of counsel. [107-109]

COMPLAINT received and sworn to in the Attleboro Division of
the District Court Department on September 1, 1992.

The case was tried before *John J. Dolan,* J.

*Josef J. D. Gazzola* for the defendant.

*Elspeth B. Cypher,* Assistant District Attorney, for the Com-
monwealth.

LAURENCE, J. Convicted in 1998 by a District Court jury of
committing one act of indecent assault and battery on a child
under fourteen (G. L. c. 265, § 13B) in 1992,[1] the defendant

---

[1]The essence of the charge (as to which the complainant, who was twelve
years old at the time of the incident, was the only percipient witness) was
that, after the defendant and the complainant had helped her mother move into
a new home which she planned to share with the defendant, he had gone into
the complainant's room in the middle of the night, touched her vagina, and
asked, "Do you want to give it to me?" The complainant yelled, "No, leave
me alone," ran upstairs to her parents' bedroom (as the defendant tried to grab
her by the ankle), and told her mother that the defendant had "molested me,"
upon which her mother hit the defendant, pushed him downstairs, and threw
him out of the house, and her father pursued him outside and beat him further.
The following day the defendant called the local police to complain that he

contends that he was deprived of the effective assistance of counsel at his trial. The sole basis of his appeal is that his trial attorney failed to request any limiting instructions with respect to supposed fresh complaint evidence by the complainant and three other witnesses either contemporaneously with each witness's testimony or in the final charge. He asserts that in the absence of such instructions the jury might well have used the fresh complaint testimony as substantive evidence of the alleged crime, rather than merely as being corroborative of the accusation. The result, he contends, was a substantial risk of a miscarriage of justice.[2] We reject the defendant's argument for several reasons.

1. First, not having followed the recommended course of making a motion for a new trial accompanied by affidavits, with the potential for an evidentiary hearing and findings, the defendant has failed to present us with a record that permits us intelligently to measure defense counsel's performance under the standard of *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974), and its progeny. Both the Supreme Judicial Court and this court have long and consistently observed that claims of ineffective assistance of counsel, at least in the first instance, should be advanced in the context of a motion for a new trial. *Commonwealth* v. *Williams*, 378 Mass. 217, 238 (1979). *Commonwealth* v. *Cross*, 4 Mass. App. Ct. 54, 57 (1976). This reflects the fact that, in gauging whether the representation by trial counsel falls below minimum constitutional standards, a reviewing court must undertake "a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel . . . falling measurably below that which might be expected from an ordinary fallible lawyer," *Delle Chi-*

had been thus assaulted and accused of being a child molester. Later that day the complainant and her mother were taken to the police station by the defendant's sister and there charged the defendant with the indecent touching.

[2]Although the defendant's ineffective assistance claim is couched in rather conclusory terms of counsel's errors having created a substantial risk of a miscarriage of justice, rather than expressly demonstrating that they "likely deprived [him] of an otherwise available, substantial ground of defence," *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), or that "better work might have accomplished something material for the defense," *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977), we proceed on the basis that the two standards are "not significantly different." *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994). See *Commonwealth* v. *Vieux*, 41 Mass. App. Ct. 526, 535 (1996), cert. denied, 520 U.S. 1245 (1997).

*aie* v. *Commonwealth,* 367 Mass. 527, 536-537 (1975), particularly whether the challenged conduct reflects "the arguably reasoned tactical or strategic judgments of a lawyer," *Commonwealth* v. *Rondeau,* 378 Mass. 408, 413 (1979), which "are virtually unchallengeable," *Strickland* v. *Washington,* 466 U.S. 668, 690 (1984), and cannot give rise to a claim of ineffective assistance unless they are "manifestly unreasonable." *Commonwealth* v. *White,* 409 Mass. 266, 273 (1991), quoting from *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978).

Where the record does not offer a sufficiently full portrayal of the various issues necessarily subsumed in such an analysis, a defendant's claim of ineffective representation must be rejected. See *Commonwealth* v. *Brookins,* 416 Mass. 97, 104 (1993); *Commonwealth* v. *McKinnon,* 35 Mass. App. Ct. 398, 406 (1993). Here, it cannot be said that "the factual basis of the claim appears indisputably on the trial record." *Commonwealth* v. *Adamides,* 37 Mass. App. Ct. 339, 344 (1994). We have no way of knowing whether the issues regarding the putative fresh complaint evidence did in fact arise during the trial,[3] or whether defense counsel's asserted failures may in fact have been the considered product of a tactical decision to concentrate the defense on an attack on the complainant's credibility (as he did through his defense witnesses and in closing),[4] rather than (if in fact fresh complaint evidence was introduced by the prosecution, but see sections 2[a] and [b], *infra*) request repeated instructions which could have been viewed by the jury as

---

[3]The numerous sidebar conferences during the trial — including one that took place upon a defense objection to a question posed to a police witness as to what the complainant (or her mother) had told the police about the incident in question two days after it occurred — were not transcribed, and the defendant did not attempt to reconstruct the record pursuant to Mass.R.A.P. 8(b)(3), as amended, 388 Mass. 1106 (1983), and 8(e), as amended, 378 Mass. 934 (1979), as it was his responsibility to do so as to provide an adequate record for review. See *Commonwealth* v. *Robicheau,* 421 Mass. 176, 184 n.7 (1995). Compare *Commonwealth* v. *Hunt,* 22 Mass. App. Ct. 932, 933 (1986) (defendant waived claim not apparent on the record where she did not avail herself of the opportunity to reconstruct the record).

[4]The defense theory at trial was that the twelve year old complainant, upset by a heated argument that evening between her mother and the defendant (her mother's cousin) over money her mother claimed the defendant owed her, and influenced by her mother's expressed intent to "have her revenge" on the defendant, had fabricated the molestation allegation. The defendant's witnesses testified to inconsistencies in the complainant's story, to her and her mother's apparent reluctance to go to a doctor or the police, and to their delay in reporting to the police. See section 2(c), *infra.*

strengthening the victim's credibility. Compare *Commonwealth v. McCarthy*, 12 Mass. App. Ct. 722, 729 (1981).[5] In short, the record contains too many gaps for us to resolve the defendant's allegations of ineffectiveness in his favor.

2. Were we to address the defendant's claim on the present state of the record, we would conclude that efforts by defense counsel to request limiting fresh complaint instructions would have been either inappropriate or unsuccessful. See *Commonwealth v. Gaeten*, 15 Mass. App. Ct. 524, 533 (1983); *Commonwealth v. Purinton*, 32 Mass. App. Ct. 640, 642-644 (1992) (counsel not ineffective for failure to take actions that would  .  have had little positive result).

---

[5]Although we have noted that, in the particular circumstances of a given case, there might be no tactical reason for counsel's failure to request a limiting instruction even while focusing his defense on highlighting inconsistencies in the Commonwealth's witnesses' accounts, *Commonwealth v. Almon*, 30 Mass. App. Ct. 721, 725-726 (1991), the "ineffective assistance" analysis is nonetheless case-specific, and the judge's failure to instruct on fresh complaint testimony, when such instruction is warranted, does not, per se, mandate reversal. *Id.* at 726. See *Commonwealth v. Trowbridge*, 419 Mass. 750, 761 (1995) (giving limiting instruction as testimony is given by each fresh complaint witness and in final charge "recommended," not mandated); *Commonwealth v. Vieux*, 41 Mass. App. Ct. at 534 (giving such instructions "is the preferred course . . . [but] not absolutely essential"); *Commonwealth v. Lorenzetti*, *ante* 37, 41 (1999). The particular facts of this case differ substantially from those in *Almon*, on which the defendant heavily relies, especially because in *Almon* there was an unusually large number of fresh complaint witnesses, each of whom provided detailed testimony, with the attendant danger of "piling on," see *Commonwealth v. Licata*, 412 Mass. 654, 659-660 (1992), whereas here (see discussion in section 2, *infra*) there was virtually no classic fresh complaint testimony, nor did it constitute a major part of the Commonwealth's case-in-chief, nor did it fill any gaps in the prosecution's case. Moreover, in *Almon*, the supposedly tactical effort of defense counsel was only to focus on inconsistencies in the fresh complaint *witnesses'* testimony and not, as here, on the more productive goal of demonstrating inconsistencies between the *complainant's* stories and her actions. Compare *Commonwealth v. Quegan*, 35 Mass. App. Ct. 129, 132 (1993). It is arguable that a defense counsel might well deem the repetition of the "corroboration" portion of the recommended fresh complaint instruction, see *Commonwealth v. Scanlon*, 412 Mass. 664, 674 (1992); *Commonwealth v. Trowbridge*, 419 Mass. at 761-762, as itself lending undue credibility to the complainant's testimony that a sexual assault had in fact occurred ("Corroborative testimony . . . [is] 'testimony which tends to strengthen, confirm or make more certain the testimony of another witness.' " *Commonwealth v. Licata*, 412 Mass. at 657 n.6, quoting from *Commonwealth v. Gardner*, 30 Mass. App. Ct. 515, 523 [1991], quoting from *State v. Bellamy*, 64 N.C. App. 454, 459 [1983]).

The defendant contends that four testimonial statements constituted fresh complaint evidence that required a contemporary limiting instruction and a limiting instruction in the final charge:

(a) The complainant's testimony that, after the defendant touched her vagina, she immediately ran upstairs and told her mother that the defendant had "molested me."

(b) The investigating police officer's testimony, in the Commonwealth's rebuttal following the close of the defendant's evidence, as to the content of the complainant's charge when she reported the incident to the police (which report was essentially the same as her trial testimony).

(c) Testimony elicited from two defense witnesses who had also been in the house on the day in question that indicated that the complainant and/or her mother had accused the defendant of touching the complainant "inappropriately."

The defendant's argument fails to demonstrate ineffective assistance of counsel with respect to any of those statements.

a. The complainant's testimony about her statement to her mother was not fresh complaint testimony that triggered the need for limiting instructions. It was merely testimony "about the fact that she made a complaint to . . . [her mother] about a sexual assault" and not as to any details of the assault. *Commonwealth* v. *Peters*, 429 Mass. 22, 28 (1999).[6]

Further, the statement was made under circumstances that qualified it as a spontaneous utterance. See *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223 (1973); *Commonwealth* v. *Crawford*, 417 Mass. 358, 361-362 (1994).[7] As an immediate or contemporaneous complaint, this statement was a specially reliable and deeply-rooted hearsay exception. See *Commonwealth* v. *Napolitano*, 42 Mass. App. Ct. 549, 557 (1997). See also *Commonwealth* v. *Sherry*, 386 Mass. 682, 691 n.5 (1982); *Commonwealth* v. *Lavalley*, 410 Mass. 641, 646 n.6 (1991); *Commonwealth* v. *Peters*, 429 Mass. at 27 n.7 (all recognizing the conceptual distinction between spontaneous utterances and fresh complaint in sexual assault cases).

[6]The complainant's mother, who was the subject of default warrants, did not testify at trial because her whereabouts were unknown.

[7]If evidence is admissible, it is of no consequence whether the judge's actual or imputed reason for allowing its introduction was correct. See *Commonwealth* v. *Signorine*, 404 Mass. 400, 403 n.1 (1989); *Commonwealth* v. *Osorno*, 30 Mass. App. Ct. 327, 332 n.8 (1991); *Commonwealth* v. *Dise*, 31 Mass. App. Ct. 701, 705 (1991).

In any event, even were we to characterize this statement as fresh complaint evidence, it would have bolstered the complainant's immediately preceding testimony as to the details of the complaint little, if at all, and could not have given rise to any risk of miscarriage of justice in these particular circumstances, where (1) the undisputed evidence informed the jury that the defendant himself had contacted the police and alerted them to the complainant's charge of molestation before she did; and (2) the judge's final charge emphasized that the jury could determine the issue of guilt only "upon evidence . . . actually produced here in this courtroom," and were not to give any substantive weight to evidence of earlier out-of-court statements by any witness ("The earlier statement is not itself positive evidence of any fact that is mentioned [in testimony] to you . . . [but can be considered] only as to the witness's credibility").

b. The officer's rebuttal testimony about the complainant's statements to him at the police station regarding the details of the charged molestation, two days after the event, might initially appear to be classic fresh complaint. It was not, however, introduced on that basis but rather on the independent ground of rehabilitating the complainant by rebutting the defense theory — elicited from the defense witnesses (see section 2[c], *infra*) — that her accusation had been a recent fabrication and the contrived product of animus and bias against the defendant.[8] See *Commonwealth* v. *Bailey*, 370 Mass. 388, 391 n.3 (1976), and authorities cited. This was made explicitly clear to the jury by the judge's contemporaneous observations that the defense case had indicated "that maybe [the complainant's] statement initially [in her testimony] may not have been correct" and that the officer's testimony they were about to hear concerning what the complainant had told him was solely "to allow you to evaluate the credibility of the [complainant's testimony] . . . and it's not itself evidence. It's just for your benefit in determining whether or not [the complainant] is a truthful witness."

---

[8]After the defense rested, the prosecutor requested a sidebar conference, which has not been transcribed. Thereafter, the prosecutor recalled the investigating officer to ask him what the complainant had said at the station regarding the defendant. Before allowing the officer to testify, the judge provided the jury with the instructions quoted in the body of this section, and in his final charge he repeated the essence of the earlier admonition regarding the nonevidentiary use of a witness's prior consistent statement introduced to rebut a charge of recent contrivance.

The limited, nonsubstantive nature of such testimony introduced to rebut a contention of recent contrivance was explicitly reiterated in the final charge ("The prior statement is relevant only as to the witness's credibility and you may not take it as proof of any fact contained therein"). We view the judge's careful instructions on the nature and permissible use of such testimony as providing the functional equivalent of limiting fresh complaint instructions, so that no risk of miscarriage of justice could have arisen even were the officer's rebuttal deemed fresh complaint testimony. See *Commonwealth* v. *Scanlon*, 412 Mass. 664, 674 (1992). Cf. *Commonwealth* v. *Estremera*, 383 Mass. 382, 394-396 (1981) (jury charge on malice). Contrast *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 761-762 (1995) ("At no time . . . was the jury instructed not to use the [significant amount of fresh complaint] testimony as substantive evidence of the crime").[9]

c. A friend of the defendant's sister testified, on direct examination as a defense witness, that in the morning after the incident when she got up she overheard the complainant's mother[10] tell the defendant's sister that the defendant had "touched [the complainant] in a way he shouldn't have." While hearsay, this was not fresh complaint testimony — i.e., a statement by the complainant concerning the defendant's alleged offensive sexual conduct or anything the defendant had said. See *Commonwealth* v. *Figueroa*, 413 Mass. 193, 198 (1992). Moreover, it is clear that defense counsel utilized this testimony tactically, to support the defense theory (that the complaint against him was a false one motivated by hard feelings of the complainant's mother over a financial dispute and her desire for revenge), by contrasting the vague allegation of sexual misconduct with the expressed reluctance of the complainant and her mother to see a doctor or call the police, despite the friend's repeated suggestions to do so. Further, even if the

---

[9]The "governing test" in evaluating whether a charge as given was legally sufficient "requires that the instructions be examined in their entirety to determine their probable impact on the jury's perception of the fact-finding function." *Commonwealth* v. *Mejia*, 407 Mass. 493, 495 (1990).

[10]On direct examination the friend testified that she heard the complainant say this to the defendant's sister. However, the friend immediately corrected this by responding negatively to defense counsel's next question, whether the complainant had told her "anything about what happened"; and on cross-examination she expressly stated that it had been the mother whom she had heard speaking to the defendant's sister.

friend's testimony fell within the category of fresh complaint, defense counsel's decision to pursue such a line of questioning, in an effort to undercut the complainant's credibility, fell well within the realm of reasonable trial strategy and does not constitute ineffective assistance. See *Commonwealth* v. *Fanara*, 47 Mass. App. Ct. 560, 564-566 (1999), and cases cited. See also note 5, *supra*.

The only bit of fresh complaint testimony that arguably entered the record came in through the second defense witness, the defendant's sister, who resided in a unit attached to that in which the alleged assault took place. Defense counsel explored her recollection about being awakened by loud noises from the adjacent unit in the middle of the night in question and going over to investigate. Upon inquiring of the complainant and her parents what had happened, she was told by the complainant that a bureau had fallen down the stairs (though no bureau was in sight) and by the complainant's parents that the defendant (who should have been sleeping there) had gone "out to the store." Nothing was said at that time charging the defendant with inappropriate behavior toward the complainant. Later that morning, however, the sister was reawakened by the complainant's mother and the complainant banging at her door. "[T]he reason [they gave] . . . was for them to come over and warn me so it wouldn't, what happened, supposedly what my brother did, so it wouldn't happen to my children." This warning the sister greeted skeptically, particularly after they rejected her suggestion that they go to the police — they "didn't want to get the police involved . . . they don't want to go to the police and I don't understand that." The complainant and her mother ultimately were taken to the police station by the sister the following day, but not at their request. On cross-examination, the prosecutor asked the sister if she remembered the conversation she had had with the complainant and her mother "where they accused your brother of touching her inappropriately," and she responded, "Right."

Assuming that the ambiguously reported and imprecise statements solicited by defense counsel constituted fresh complaint, they were manifestly elicited for the same purpose as was that of the sister's friend — to point up inconsistencies in the complainant's story and emphasize her and her mother's disinclination to contact the authorities — and were used to that end in counsel's closing. They accordingly enjoy the same

protective tactical rationale. See *Commonwealth* v. *McCarthy,* 12 Mass. App. Ct. at 729; *Commonwealth* v. *Fanara, supra.* These in turn opened the door for the prosecutor's very brief treatment of the subject on cross-examination.

Moreover, both sets of statements were so abbreviated and inexplicit that they could have "added little or nothing to [the complainant's] credibility with respect to her in-court account of the defendant's conduct," *Commonwealth* v. *Figueroa,* 413 Mass. at 198, but rather were "mere summar[ies] of the victim's testimony at trial . . . [and therefore] cumulative and not prejudicial to the defendant." *Commonwealth* v. *Lavalley,* 410 Mass. at 645. Compare *Commonwealth* v. *Licata,* 412 Mass. 654, 659 (1992) (prejudice when there is "repetitive testimony from several witnesses regarding the details of the complaint"). Finally, the judge's several instructions described above adequately informed the jury of the limited use of such out-of-court statements — for evaluating credibility and not as substantive evidence — and thus effectively served the same purpose as a fresh complaint instruction.

For the foregoing reasons, we conclude that, in the particular circumstances of this case, the complained-of failures of defense counsel have not been shown to constitute ineffective assistance of counsel or to have created a substantial risk of a miscarriage of justice.

*Judgment affirmed.*