## COMMONWEALTH *vs.* RICHARD WENTWORTH.

No. 00-P-317.

Middlesex. May 18, 2001. - October 25, 2001.

Present: GREENBERG, GILLERMAN, & DOERFER, JJ.

*Child Abuse. Rape. Indecent Assault and Battery. Practice, Criminal,* Compe-
tency to stand trial, Opening statement, Argument by prosecutor, As-
sistance of counsel, Instructions to jury. *Evidence,* Competency, Corrobora-
tive evidence, Fresh complaint.

This court concluded, based on a review of the record of a criminal case,
including the questions and statements by the trial judge, two expert
opinions, the pretrial proceedings, and the conduct of the parties at trial,
that the trial judge did not abuse her discretion when she found that the
defendant, with the continuing assistance of a doctor, was competent
throughout the trial. [84-89]

At the trial of indictments charging rape of a child and indecent assault and
battery on a child, certain testimony from the mother and the victim
concerning the victim's report of sexual abuse, which merely stated the
fact that a complaint had been made about a sexual assault, did not
constitute fresh complaint testimony or impermissible self-corroboration,
and the judge's cautionary instructions to the jury regarding their
consideration of that evidence mitigated any potential prejudice;
consequently, the admission in evidence of such testimony, and the
prosecutor's reference to that testimony in both his opening statement and
closing argument, did not create a substantial risk of a miscarriage of
justice. [89-94]

A criminal defendant failed to demonstrate that his trial counsel had rendered
ineffective assistance. [94-95]

INDICTMENTS found and returned in the Superior Court Depart-
ment on June 1, 1995.

The cases were tried before *Margot Botsford,* J.

*Leslie W. O'Brien* for the defendant.

*Maura A. Looney,* Special Assistant District Attorney, for the
Commonwealth.

GILLERMAN, J. The defendant, having been found competent to

stand trial, was convicted by a jury on indictments charging him with rape of a child under the age of sixteen, in violation of G. L. c. 265, § 23, and two counts of indecent assault and battery on a child under the age of fourteen, in violation of G. L. c. 265, § 13B.[1] On appeal, the defendant argues his conviction should be vacated because (1) the evidence was insufficient to find, and the judge did not specifically determine, that he was competent to stand trial; (2) the judge admitted certain out-of-court statements by the complainant; (3) the prosecutor made certain improper remarks in his opening statement and closing argument; and (4) the defendant's counsel was ineffective in failing to request a limiting instruction regarding the victim's testimony that she reported the sexual abuse to others.

We summarize the facts which the jury could have found, reserving additional details for our discussion of the claimed errors.

When the victim was seven years old, she lived with her family on the second floor of a multifamily dwelling in Lowell. Her parents worked full time, leaving her grandmother to care for her after school. The victim would often play with a friend who was two years younger than the victim and lived on the first floor.

The defendant either lived in the first-floor apartment or visited there every day. The victim assumed that her first-floor neighbors were related to the defendant because they called him "uncle."

Almost daily, and continuing for a period of about a year and a half beginning when the victim was seven years old, the defendant, her friend, and the victim would enter a back room on the first floor where the defendant would give the girls a cigarette to share. The defendant would "sometimes give [the girls] fifty cents." The defendant would sit on the edge of the bed and either unzip his pants or have the girls unzip his pants for him. One at a time, the defendant would require the girls to perform fellatio on him. The defendant would sometimes touch the girls' vaginal area, usually over their clothes. The defendant also made the girls kiss him. It was not until 1993, when the

---

[1] The jury found the defendant not guilty of one count of assault and battery on a child under the age of fourteen.

victim was sixteen, that she told her mother what had happened with the defendant.

1. *Competency.* "Competency to stand trial requires that the defendant have (1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . (2) a rational as well as factual understanding of the proceedings against him." *Commonwealth* v. *Lyons,* 426 Mass. 466, 468-469 (1998), quoting from *Dusky* v. *United States,* 362 U.S. 402 (1960). See *Commonwealth* v. *Prater,* 420 Mass. 569, 573 (1995), quoting *Drope* v. *Missouri,* 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial"). The Commonwealth had the burden to prove by a preponderance of the evidence that the defendant was competent. *Commonwealth* v. *Lyons,* 426 Mass. at 469.

On January 5, 1998, a pretrial evidentiary hearing was held on the defendant's motion to suppress statements and regarding the defendant's competence to stand trial. The Commonwealth and the defendant presented the qualified expert testimony, including written reports (which were admitted as exhibits), of Dr. Philip Candilis and Dr. Ronald Ebert, respectively. Each expert had interviewed the defendant. The motion judge allowed the motion to suppress on the ground that the defendant had not made a knowing, intelligent and voluntary waiver of his Miranda rights, but without explanation, he made no findings and did not rule on the competency issue.

The case went to trial before a different judge. At a hearing immediately prior to the impanelment of the jury, Dr. Ebert, for the defendant, testified again, followed by extensive colloquy among the judge and counsel for the parties. The judge had read the transcript of the previous hearing, and the motion judge's limited findings.

Resolving the issue of the defendant's competency was clearly a difficult task. This was evident from the written reports of the experts and the testimony of Dr. Ebert, all of which we now summarize.

Dr. Candilis, for the Commonwealth, interviewed the

defendant twice, for a total of two hours. We quote from his "Assessment and Recommendations."

> "Mr. Wentworth is a man with low I.Q. and no formal schooling. He expresses himself simply and concretely and has been able to retain employment only at minimally challenging jobs. . . . The question of his competence to stand trial, however, is complicated by his apparent ability to understand more completely than a first impression admits. . . .

> "Although Mr. Wentworth presents with obvious deficits that at first look appear to confer incapacity, it is possible to re-direct his concentration and focus him on the topic at hand. His *mild mental retardation* likely contributes to his tendency to respond "I don't know" to emotionally charged or embarrassing questions or to questions that are broad or vague. *He also requires being consistently re-directed to the topic of conversation* and tends to repeat himself if not so instructed. . . . Generally he appears capable of giving more complete answers than he offers originally.

> "*Mr. Wentworth also demonstrates certain strengths. He exhibits solid understanding of courtroom personnel and procedures. He can retain facts and time progressions as in his detailed descriptions of his prior jobs dating back many years. These strengths will nonetheless require some shoring up given his mental retardation.* It would be helpful to the Court to follow certain suggestions during any potential proceedings." [Then followed a list of suggestions, including "Use simple words"; "Break complex sentences . . ."; "Speak slowly to him"; "Remind him frequently to concentrate . . ."; "Avoid broad or vague questions"; "Frequently ask him questions about his understanding that avoid Yes/No answers."]

> "In my opinion, *Mr. Wentworth's greatest difficulty will be to pay sufficient attention to assist his attorney. The need to identify information from witnesses and to keep up with the speed of trial will seriously tax his capacity to attend and concentrate . . . .*"

> "*Whether the capabilities described here are sufficient*

*for him to be found competent to stand trial in a proceeding of high risk to him remains an open clinical question and will await the Court's final determination.*" (Emphasis supplied throughout.)

Dr. Ebert's written report was directed mainly at the suppression motion. Nevertheless, there are passages in his report which bear directly on the defendant's competency to stand trial. We quote selected passages:

"In my opinion, Richard Wentworth currently suffers from mental retardation, a condition that likely has been lifelong . . . . *He does not appear to suffer from a mental illness at the present time. . . .*

"It is this clinician's opinion that Mr. Wentworth does not have sufficient present ability to consult with his attorney with a reasonable degree of rational understanding . . . . *Mr. Wentworth has a marginal factual understanding of court proceedings, [and] this understanding is markedly limited and becomes colored by his tendency to personalize the court issues and to mask his anxiety with anger.* There is little doubt in this clinician's mind that during a trial, *Mr. Wentworth would have a significantly lowered understanding of court proceedings (because of his anxiety and confusion) and might very well have difficulty maintaining appropriate decorum in the courtroom.*" (Emphasis supplied throughout.)

Dr. Ebert, as noted earlier, was a witness at a competency hearing before the trial judge prior to the commencement of the trial. The judge quickly got to the point that was decisive for her. She asked Dr. Ebert whether he was "present when there was a discussion that perhaps throughout a trial you or someone else similar could sit with him and maintain his focus on what the proceedings were?" Dr. Ebert replied, "That's right." The judge next asked, "[D]o you have an opinion, to a reasonable degree of psychological certainty, that that would assist him in maintaining his focus?" Dr. Ebert acknowledged that he did, and the judge asked Dr. Ebert to give his opinion. Dr. Ebert then testified, "My opinion is that it would assist. I couldn't assure the court that, in fact, it would work, but it seems to me that without that, I could assure the court that he simply would

not attend." Dr. Ebert was unable to tell the judge how long the defendant would be able to focus on the proceedings before he loses attention.

Thereafter, the judge elicited testimony from Dr. Ebert that the defendant has "some intellectual fund of knowledge . . . some street savvy or street smarts . . . [and that] he has been able to function pretty much for 62, 63 years at that level." The judge then received the endorsement of Dr. Ebert regarding the guidelines suggested by Dr. Candilis.

After arguments by counsel, the judge ruled in open court:

> "Well, my view is this, that based on reading the other transcript and today, I don't think there is a disagreement that Mr. Wentworth . . . satisfies the competency standard as far as you have all discussed, understanding the charges against him in a concrete way.

> "He understands . . . who the players are and their roles with perhaps some distortion for the district attorney and his role, that he knows what the function of the judge is, what the function of the prosecutor is, what the function of his own lawyer is. I think there is no question but that *the real issue comes about whether he can assist his attorney in the defense of this case.*

> "I gather that to some degree, that is an unknown. What I have learned is that perhaps he can do that with assistance, with frequent breaks, with the assistance of Dr. Ebert or someone playing that kind of role to check whether he is both paying attention and grasping at a basic level what the proceeding is about. *It seems to me that from the description of Dr. Candilis and Dr. Ebert, that there is a reasonable probability that he can do so.* I recognize two things. One, without the assistance of Dr. Ebert, I do not think we could proceed. So if Dr. Ebert is available today and tomorrow, that is great. I think if the trial lasts beyond that, we are going to need somebody to do that.

> "Second, that if as the trial continues — I mean, it seems to me *competency is always an open issue.* If the trial continues, [and if] it is the opinion of Dr. Ebert that

Mr. Wentworth . . . has lost the ability to follow or the fundamental ability to understand what is going on and to assist you, Mr. Callahan [defendant's counsel], then I think we have to revisit this issue. *But, at this particular point in time, it is my view that with that assistance, Mr. Wentworth is competent to stand trial.*" (Emphasis supplied throughout.)

The judge further stated:

"*[I]t is my view that with the assistance of Dr. Ebert, although no question Mr. Wentworth suffers from substantial limitations, that he is competent to proceed at this point. . . .* I appreciate that [these are serious charges with very serious consequences], and it seems to me that is why this is going to have to be an issue that is going to be open as we proceed. It may be that we don't get to the end, but *I do think at this point that we can proceed.*" (Emphasis supplied.)

The judge had narrowed the issue to whether the defendant was capable of assisting his counsel in the defense of the case against him. In substance, the judge found that by adopting the suggestions of Dr. Candilis, and with the continued assistance of Dr. Ebert,[2] there would be a "reasonable probability" that the defendant was capable of paying attention to the trial and could grasp what was going on. In other words, the judge found that the defendant was competent to stand trial. The judge's findings of fact are entitled to substantial deference on review. See *Commonwealth* v. *Lyons*, 426 Mass. 466, 469 (1998) ("The Commonwealth has the burden to prove by a preponderance of the evidence that the defendant was competent. . . . When reviewing the judge's finding of competency, we give substantial deference to his findings of fact" [citation omitted]); *Commonwealth* v. *Prater*, 420 Mass. 569, 574 (1995). The judge's clear expression of her conclusion was a finding that the Commonwealth had sustained its burden of proof as to the competency of the defendant *at that stage of the trial.*[3] The judge did not err in reminding counsel that she intended to keep the competency is-

[2]Dr. Ebert assured the court that he was available that day and the next day.

[3]The defendant's argument that the judge made no such finding has no merit and requires no further discussion.

sue open during the entire trial. That was merely a recognition of the difficulty and complexity of the problem.

That the judge initially found the defendant competent to stand trial did not foreclose a later finding that he was incompetent so long as the judge alerted counsel (as occurred here) that the issue could be raised by the defendant at any later time. See *Commonwealth* v. *Crowley*, 393 Mass. 393, 402 (1984) ("[A] judge's determination that a defendant is competent to stand trial may be modified later if changed circumstances indicate that the defendant is no longer or never was competent to stand trial"). See also *Commonwealth* v. *Martin*, 35 Mass. App. Ct. 96, 99 (1993).

Our review of the record, including the questions and statements by the judge, the two expert opinions, the pretrial proceedings, and the conduct of the parties at trial,[4] convinces us that the judge did not abuse her discretion when she found that the defendant was competent throughout the trial.[5] *Commonwealth* v. *Lyons*, 426 Mass. at 469. See *Commonwealth* v. *Kostka*, 370 Mass. 516, 522-523 (1976); *Commonwealth* v. *DeMinico*, 408 Mass. 230, 235-236 (1990).

2. *Introduction of certain testimony.* The defendant argues that the admission of the testimony from the mother and the

[4]At no time did defense counsel or Dr. Ebert, who was sitting beside the defendant for the first two days of trial, alert the judge to any difficulties with the defendant's ability to assist in his own defense. We do not consider this failure to alert the judge a waiver of the issue, compare *Commonwealth* v. *Simpson*, 428 Mass. 646, 648-649 (1999) (competence cannot be waived), but rather as additional evidence that the defendant was competent to stand trial. The judge took frequent breaks; defense counsel agreed that "seem[ed] to be enough." At the close of the evidence, both defense counsel and Dr. Ebert stated that there were no major difficulties during the course of the trial. Finally, the judge had the opportunity to observe the defendant throughout the trial and did not raise the issue of competence sua sponte. Cf. *Commonwealth* v. *DeMinico*, 408 Mass. 230, 236 (1990) (judge may consider defendant's demeanor in determining competency).

[5]The defendant makes much of the fact that there is no indication in the record that the judge placed the burden of proof of competence on the Commonwealth. However, it is clear that the judge was aware of the applicable test for competence and, from that fact, we can infer that she knew on whom the burden fell. Cf. *Commonwealth* v. *Ortiz*, 431 Mass. 134, 141 (2000) (we presume that judges correctly instruct themselves on the law). In any event, our review of the record convinces us that the Commonwealth met its burden.

victim concerning the victim's report of sexual abuse, and the prosecutor's reference to that testimony in both his opening and closing, was improper because it was not admissible either as fresh complaint testimony or as prior consistent statements.

Prior to the commencement of the trial, the defendant filed a motion in limine to preclude fresh complaint testimony. In response, the prosecutor explained that he would not be offering fresh complaint testimony because the victim had not made the accusations "until many, many years [later], well outside fresh complaint." His intention, he said, was merely to ask the mother whether her daughter gave her information and what the mother did as a result of receiving that information. The prosecutor stated that there would be "no recitation of what was said." Defense counsel accepted that resolution.

Nevertheless, the defendant claims error in the admission of certain out-of-court statements elicited by the prosecutor from both the victim and her mother which we set out in the margin.[6] Because defense counsel did not object, our review is limited to whether there was error, and if so whether the introduction of

---

[6]The defendant complains of the following testimony at trial:

Q.    "And some time in April [of 1995], again without saying any of what was said, did you have a conversation with a person by the name of . . . Jeff Turiel at the high school?"

A.    "Yes."

. . .

Q.    "And as a result of that, were you informed that Mr. Turiel would have to do something with that information? And again, yes or no."

A.    "Yes."

Q.    "And at some point after that April 3rd of 1995, did you have an opportunity to speak with a police officer?"

A.    "Yes."

Q.    "And who was that?"

A.    "I'm not sure of his name, but —"

Q.    "Was it George Sullivan?"

A.    "Oh, yes."

Q. "Okay. And did you learn at that time that he was a Lowell police officer?"

A. "Yes."

Q. "And after that initial — again, not what was said, did you have an opportunity to go and actually sit down with Inspector Sullivan?"

A. "Yes."

Q. "And where was that?"

A. "The police department."

Q. "Here in Lowell?"

A. "Yes."

QAnd at that time, did you give him a statement as to what you had alleged against Mr. Wentworth?"

A. "Yes."

Q. "And was it in as great — again, not what was said, but *was it in as great detail as what you've said today*?" (Emphasis supplied.)

A. "Yes."

The defendant also complains of the testimony of the victim's mother. On direct, she testified as follows:

Q. "Okay, now jumping ahead to roughly 1993. Did you, without saying any words, did you have a conversation with your daughter regarding the allegations against Mr. Wentworth?"

A. "Yes."

Q. "And was that here in Lowell?"

A. "Yes, it was."

Q. "And was [the victim] living with you at that particular time?"

A. "Yeah."

. . .

Q. "Over the next — after she told you some things, was anything legally done at that time in 1993? Did you go to the police?"

such statements created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Babbitt*, 430 Mass. 700, 709 (2000).

As to the victim's testimony quoted in note 6, *supra*: it is true, of course, that a complainant may not "engage in self-corroboration." *Commonwealth* v. *Peters*, 429 Mass. 22, 28 (1999). A complainant may testify that she made a complaint and to whom she complained, but the details of the complaint must come from the fresh complaint witness. *Id.* at 30. Here, the victim's quoted testimony was part of her direct testimony. She had just completed that part of her testimony in which she gave a complete description of what she alleged the defendant had done to her when she was seven years old. At the trial the victim acknowledged that what she had previously told police was "in as great detail" as what she had earlier testified to in court.

Because neither the victim nor her mother repeated the specifics of the allegations made against the defendant, the testimony "was not fresh complaint testimony that triggered the need for limiting instructions. It was merely testimony 'about the fact that [a complaint had been made] . . . about a sexual assault' and not as to any details of the assault." *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 110 (1999), citing *Commonwealth* v. *Peters*, 429 Mass. at 28. There was no error.

Further, any potential prejudice was mitigated by the judge's instruction to the jury in her final charge that "the evidence you

---

    A.    "No."

The mother also testified as to the meeting with the victim and Mr. Turiel that the victim had previously described:

    Q.    "Now, again, without getting into what was actually said at that meeting, did [the victim] once again make some allegations regarding Richard Wentworth?"

    A.    "Yes, she did."

    Q.    "As a result of that, did you become aware that Mr. Turiel would have to do something with that information?"

    A.    "Yes, I did."

The mother also described the meeting with Inspector Sullivan, but did not restate the specifics of any allegation.

heard from [the victim] concerning her conversations with persons prior to testifying in this case was simply restricted to the fact that she spoke to various persons; her mother, or the police officer, or the guidance counselor. The contents of those conversations are not part of the evidence." See *Commonwealth v. Deschamps*, 1 Mass. App. Ct. 1, 4 (1979) (defendant protected from prejudice by judge's specific charge to jury). Even if there was error, there was no substantial risk of a miscarriage of justice.

3. *Claims of prosecutorial error.* a. *Opening statement.* The defendant claims error in three remarks by the prosecutor during his opening statement. The prosecutor stated that in August of 1993, eight years after the abuse, the victim told her mother that "Mr. Wentworth used to sexually abuse me." The prosecutor also told the jury that in May, 1995, the victim spoke with her guidance counselor at school and told him "what happened." Finally, the defendant claims error in the prosecutor's remark that the victim was interviewed by Inspector George Sullivan and subsequently the District Attorney's office, "and based on what she told, obviously, this is why we are here today."

Defense counsel objected to the prosecutor's reference to these statements and noted that they would not be admissible as either fresh complaint or prior consistent statements. The judge declined to rule on the objection, reserving her decision until the evidence was presented. We shall assume that the objection was preserved.

"[A] claim of improper argument by the prosecutor must be judged in light of the entire argument, the judge's instructions to the jury, and the evidence actually introduced at trial." *Commonwealth v. Thomas*, 429 Mass. 146, 158 (1999). See *Commonwealth v. Riberio*, 49 Mass. App. Ct. 7, 11 (2000).

The prosecutor's remarks did not include any details of the alleged sexual abuse that may have been the subject of the conversations between the victim and her mother or between the victim and the guidance counselor; the prosecutor's statements were limited to the fact that such conversations occurred. See discussion *supra.*

Moreover, the judge in her preliminary statements to the jury and twice in her final charge cautioned the jury that an opening

statement was not evidence. The judge also instructed the jury that the contents of the conversations were not in evidence and the evidence was limited to the fact that the victim spoke with the others. We may presume that the jury understood and followed these instructions, see *Commonwealth* v. *Pope*, 406 Mass. 581, 588 (1990), and find no reversible error in the prosecutor's opening remarks. See *Commonwealth* v. *Riberio*, 49 Mass. App. Ct. at 11 (judge's instructions mitigated any potential prejudice in opening argument).

b. *Closing argument.* The defendant claims that the prosecutor erred when he said in his closing argument, "Was [the victim's] story consistent? She told her mother, she told her guidance counselor, she told the police, the D.A.'s office, and then you, the same, from beginning in 1993 'til Friday afternoon when she got off the stand. It hasn't changed." The defendant objected on the ground that the substance of what the victim said to others was not in evidence. He requested that the judge correct the error. The judge agreed to do so, and in her charge to the jury, she emphasized that the victim's conversations with others were not in evidence. The objection was properly resolved notwithstanding the absence of a limiting instruction when the error occurred.

4. *Ineffective assistance of counsel.* "[C]laims of ineffective assistance of counsel, at least in the first instance, should be advanced in the context of a motion for a new trial." *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 107 (1999). That course was not followed here, and we must assess the claim without the benefit of a review by the trial judge who heard and saw the performance of counsel.

The defendant, on direct appeal, argues that defense counsel was ineffective for failing to request a limiting instruction regarding the supposed fresh complaint testimony. However, at the charge conference, defense counsel conceded that "there [was] no real fresh complaint that's given in this case."

We have concluded, *supra,* that there was no fresh complaint error, and counsel cannot be ineffective for failing to make a request for instructions that would have been unsuccessful. *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. at 109. Cf. *Commonwealth* v. *Sowell*, 34 Mass. App. Ct. 229, 236 (1993)

("Where an appellate court has already answered [the] question in the negative, a claim based upon the same issue but newly attired in the garb of ineffective assistance of counsel is duplicitous").

*Judgments affirmed.*