NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-327

ADOPTION OF FABIO.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother and father appeal from decrees entered in the Juvenile Court finding them unfit to parent their son, Fabio, terminating their parental rights as to him, and declining to issue an order of visitation. On appeal, the mother argues that (1) the judge's findings and conclusions of law are fundamentally flawed as there was insufficient evidence to support them and because they were insufficiently detailed, and (2) the emotional bond between the mother and Fabio requires an order of posttermination and postadoption visitation. The father argues that (1) the judge should have recused herself because comments she made during a pretrial hearing suggested she was biased against the parents, (2) the judge's decision is insufficiently supported due to a variety of evidentiary issues, and (3) the judge improperly considered and relied on the

---

[1] A pseudonym.

father's juvenile record to support her findings.  After careful review of the record and consideration of the judge's findings, we affirm.

Discussion.  1.  Sufficiency of the evidence.  Both the mother and father assert that the evidence was insufficient to support the judge's findings of fact, warranting reversal of her decision.  They support this argument with a number of contentions.  We address these in turn and conclude that there was ample evidence in the record to support the judge's determination that termination of parental rights was in Fabio's best interests.

"To terminate parental rights to a child and to dispense with consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests."  Adoption of Bea, 97 Mass. App. Ct. 416, 421-422 (2020), quoting Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012).  "In determining whether the best interests of the children will be served by issuing a decree dispensing with the need for consent, a court shall consider the ability, capacity, fitness, and readiness of the child's parents . . ." (quotation and citation omitted).  Adoption of Jacques, supra.  "On appeal, '[w]e give substantial deference to a judge's decision that

termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion.'"[2]  Adoption of Bea, supra at 422, quoting Adoption of Ilona, 459 Mass. 53, 59 (2011).

Here, the judge heard from three witnesses[3] and reviewed twenty-two exhibits over the course of two days of trial.  The exhibits included, inter alia, Court Activity Record Information (CARI) reports for both the mother and father,[4] an affidavit from a Department of Children and Families (DCF) social worker with knowledge of Fabio's case, eight court reports authored by a DCF social worker, a 51A report describing the circumstances under which Fabio was removed from the mother and father's care,

---

[2] The father argues that we should conduct a de novo review of the judge's findings and conclusions of law because he did not testify during the trial and because the judge relied so heavily on documentary evidence.  We are not persuaded.  As we discuss infra, this was a traditional trial featuring both witness testimony and documentary evidence.  See Adoption of Bea, 97 Mass. App. Ct. at 422.

[3] The witnesses were the mother, the ongoing social worker, and the adoption social worker.

[4] The father argues that the judge committed reversible error by relying on his juvenile criminal record in support of one factual finding detailing his criminal activity while still a minor.  See G. L. c. 119, § 60.  See also Mass. G. Evid. § 1115(b)(1) (2023).  Because the father did not object to the admission of these records at the time of trial, the issue is waived.  See McLaughlin v. American States Ins. Co., 90 Mass. App. Ct. 22, 33 n.17 (2016).  "An issue not raised or argued below may not be argued for the first time on appeal" (citation omitted).  Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

family action and assessment plans prepared by DCF, and health records for both the mother and father.

These exhibits, coupled with the witnesses' testimony, were sufficient to support, by a fair preponderance of the evidence, the judge's findings of fact, which she described generally in the summary of her findings of fact and conclusions of law:

> "[Fabio] was born substance exposed, and at his birth Mother tested positive for heroin, cocaine and fentanyl. Both parents have a significant history of substance abuse and failed at treatment numerous times. The parents were homeless at the time of [Fabio]'s birth, with no concrete plan for housing.

> "Throughout the next twenty-one months, while [Fabio] remained in foster care, Father and Mother continued to abuse drugs, cycle in and out of programs and lack stable housing.

> "By the start of the termination trial . . . , neither parent was in any kind of consistent substance abuse treatment, they had no stable housing, they were not being honest with [DCF] or any providers, they had cycled in and out of several programs (continuing to abuse substances while in the programs), they refused to sign releases or provide drug screens, their visitation with [Fabio] was inconsistent and their housing remained unstable. In short, throughout the almost two years this case has been open the parents did little, if anything, to achieve reunification with their son.

> "Any services the parents have engaged in have been minimal, and without lasting benefit. They do not acknowledge, and have done little if anything to address, the severity of their substance abuse and instability."

See Adoption of Bea, 97 Mass. App. Ct. at 421-422. These findings, in turn, supported the judge's ultimate conclusion:

> "At this time, the Court finds there is clear and convincing evidence that Father and Mother are unfit to

4

care for [Fabio], and that they will remain so for the foreseeable future. The Court finds that it is in [Fabio]'s best interest that Mother's and Father's parental rights be terminated, and that [Fabio] be afforded a chance for safety and stability by way of adoption."

See id.

Both the mother and father argue that the trial, which occurred over the span of two nonconsecutive half-days, was too short to sufficiently support the judge's findings of fact and conclusions of law. We are not persuaded. The operative question is whether the evidence produced at trial, however long that trial might have been, provided adequate support for the judge's findings of fact and conclusions of law. Adoption of Bea, 97 Mass. App. Ct. at 421-422. In this case, it clearly did. For the same reason, we disagree with the parents' argument that, because of the minimal trial testimony, the judge over relied on documentary evidence to support her findings. It is settled law that, so long as the documentary evidence provides sufficient support for termination of parental rights, as it did so here, there is no error in the judge's decision to use it in arriving at her findings and conclusions. See Adoption of Quentin, 424 Mass. 882, 886 (1997) ("the judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference" [citation omitted]).

The mother further asserts that "[t]he evidence [was] insufficient to ascertain how the court concluded there was

5

clear and convincing evidence to terminate [her] parental rights."  She contends that there was inadequate detail in the judge's factual findings, seemingly because the judge did not explicitly state what evidence she relied on to reach her findings.  This argument is unavailing.  See Adoption of Elena, 446 Mass. 24, 30-31 (2006) ("Subsidiary findings must be established by a fair preponderance of the evidence and will not be disturbed unless clearly erroneous" [citation omitted]).  Contrary to the mother's assertion, the judge's findings of fact with respect to the mother's and father's unfitness in light of their drug abuse, housing instability, and inadequate engagement with services were supported by the evidence and were sufficiently detailed to support the termination of parental rights.  See Adoption of Bea, 97 Mass. App. Ct. at 421-422.

The father, likewise, argues that several of the judge's findings of fact were unsupported by the evidence.  Without reciting his contentions individually, suffice it to say he asserts that the judge overlooked evidence, unfairly dismissed the father's efforts to reunite with Fabio, and otherwise portrayed him unfairly in her findings.  These arguments are meritless and amount to an effort to reargue the evidence.  The judge's findings are well supported by the evidence, and as a result we discern no error.  See Adoption of Quentin, 424 Mass. at 886.

2.  Recusal.  We turn next to the father's argument that the judge erred by denying his motion for her recusal.  As background, on December 3, 2021, during a permanency hearing, the parties submitted a stipulation to their parental unfitness along with fourteen exhibits explicitly submitted by the parties in support of the father's and mother's admission that they were currently unfit for the welfare and best interests of the child.  Prior to accepting the stipulation, during the hearing, the judge asked the parties why she should not consider terminating parental rights at that time, given that the case was one year old, that Fabio had been in DCF custody his entire life, and that both parents had relapsed as recently as the prior month.  The judge heard from all parties on the matter and ultimately accepted the stipulation, as well as the parties' joint agreement for a three-month trial date which the judge marked as no further continuances.[5]  At the following hearing, in March, the father filed a motion seeking to have the judge recuse herself, arguing that her comments at the December 3 hearing and her insistence on setting a trial date within the following three months cast doubt as to her impartiality.  The judge denied this motion, emphasizing the parents' noncompliance with

---

[5] Notwithstanding her order barring further continuances, the judge left open the possibility of continuing the trial if DCF had evidence of the parents' sobriety and progress toward reunification.

7

their reunification plans and the need for permanency for Fabio, and concluding that having conducted the two-prong examination of herself required in determining whether recusal was warranted, that she had no bias with regards to the case before her and that given the record an objective appraisal of her impartiality could not reasonably be questioned. See Lena v. Commonwealth, 369 Mass. 571, 575 (1976) (describing two-part test with respect to necessity of recusal). We discern no abuse of discretion in the judge's denial of the father's motion to recuse.

"The strict ethical constraints to which judges are subject not only require a judge to examine his or her own conscience for disqualifying bias, and to act accordingly, but also obligate the judge to recuse himself or herself from any matter in which 'the judge's impartiality might reasonably be questioned.'" Adoption of Iliana, 96 Mass. App. Ct. 397, 407 (2019), quoting S.J.C. Rule 3:09, Code of Judicial Conduct, Canon 2, Rule 2.11 (A) (1) (2016). "The matter of recusal is generally left to the discretion of the trial judge . . . and an abuse of that discretion must be shown to reverse a decision not to allow recusal." Haddad v. Gonzalez, 410 Mass. 855, 862 (1991).

Here, after asking why she should not terminate parental rights immediately, the judge asked each attorney to answer her

8

question, gave each attorney time to do so, and ultimately accepted the stipulation as to unfitness in lieu of terminating parental rights at that time. In the context of a permanency hearing in which the parties present arguments to a judge urging her to support a stipulation, there is nothing improper about a judge asking counsel to explain why an alternative path is not more appropriate, particularly in light of evidence of unfitness before the judge at that time. See Adoption of Iliana, 96 Mass. App. Ct. at 407.

3. Ineffective assistance of counsel. The father further argues that he received ineffective assistance of counsel for a variety of reasons. Specifically, he contends that his trial counsel was ineffective because he (1) failed to cross-examine the mother, (2) failed to meet with the father prior to trial, (3) failed to redact certain exhibits, (4) failed to submit appropriate motions in limine as well as submit proposed findings, and (5) failed to request an order of visitation. Notwithstanding these assertions on appeal, the father did not file a motion for a new trial below.

"Consistent with the approach taken in criminal cases, '[a]bsent exceptional circumstances, we do not review claims of ineffective assistance of counsel for the first time on appeal.'" Adoption of Ulrich, 94 Mass. App. Ct. 668, 673 (2019), quoting Care & Protection of Stephen, 401 Mass. 144, 150

9

(1987).  "Where the record does not offer a sufficiently full portrayal of the various issues necessarily subsumed in [an ineffective assistance] analysis, a defendant's claim of ineffective representation must be rejected."[6]  Commonwealth v. McCormick, 48 Mass. App. Ct. 106, 108 (1999).  Accordingly, we decline to reach the father's ineffective assistance arguments.[7]  See Adoption of Ulrich, 94 Mass. App. Ct. at 673.

4.  Visitation.  Finally, the parents argue that they should have been granted visitation with Fabio.

_____

[6] As we have explained,

> "This reflects the fact that, in gauging whether the representation by trial counsel falls below minimum constitutional standards, a reviewing court must undertake a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel falling measurably below that which might be expected from an ordinary fallible lawyer, particularly whether the challenged conduct reflects the arguably reasoned tactical or strategic judgments of a lawyer, which are virtually unchallengeable and cannot give rise to a claim of ineffective assistance unless they are manifestly unreasonable" (quotations and citations omitted).

Commonwealth v. McCormick, 48 Mass. App. Ct. 106, 107-108 (1999).

[7] Were we to consider the father's argument irrespective of its lack of record support, we would discern no prejudice stemming from his counsel's alleged shortcomings where the evidence of his unfitness was "overwhelming."  Adoption of Valentina, 97 Mass. App. Ct. 130, 137 (2020).  We note that the father has not proposed any way in which his attorney's alleged shortcomings prejudiced him other than a conclusory assertion that a different result favoring father was possible or the outcome of the trial likely would have been different under different circumstances.

10

"A judge may decline to order postadoption visitation, or 'may order limited postadoption contact, including visitation, between a child and a biological parent where such contact is currently in the best interests of the child.'"  Adoption of Saul, 60 Mass. App. Ct. 546, 556 (2004), quoting Adoption of Vito, 431 Mass. 550, 553 (2000).  "An order for postadoption contact is grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent nor the legal consequences of their natural relation" (quotation omitted).  Adoption of Saul, supra at 556.  "Appellate review of a judge's denial of a request for postadoption visitation is under the abuse of discretion standard."  Id. at 555, quoting Adoption of Nicole, 40 Mass. App. Ct. 259, 264 (1996).

Here, the judge issued 200 thoughtful findings of fact based on her review of the record before her, many of which we have discussed supra.  These findings support the judge's conclusion that an order of postadoption visitation is not in Fabio's best interests.  See Adoption of Saul, 60 Mass. App. Ct. at 556.  The mother's contention that the judge erred by concluding that there is "not a significant emotional relationship between [Fabio] and either parent" is unavailing.  Although weekly visitation was a part of the mother's action

11

plan, she was inconsistent with appearing for visits through Fabio's life, to the extent that DCF stopped transporting Fabio to the visitation center before the mother and father actually arrived. Taken in conjunction with the fact that Fabio was removed from the mother's custody immediately following his birth and has never lived with her, alongside the mother's documented instability, we discern no error in the judge's declining to order posttermination or postadoption visitation. See id. at 556. We are further unpersuaded by the father's similar argument that he visited consistently and positively with Fabio and that the judge erred by failing to make such a finding. See Adoption of Quentin, 424 Mass. at 886.[8]

Decrees affirmed.

By the Court (Wolohojian, Desmond & Sacks, JJ.[9]),

Assistant Clerk

Entered: March 8, 2024.

---

[8] Any arguments raised by the parents but not explicitly addressed in this decision "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Sosa, 493 Mass. 104, 124 n.12 (2023), quoting Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[9] The panelists are listed in order of seniority.