COMMONWEALTH *vs.* ROBERT F. RIBERIO.

No. 98-P-697.

Plymouth. December 8, 1999. - March 20, 2000.

Present: KASS, GREENBERG, & BECK, JJ.

*Jury and Jurors. Practice, Criminal,* Opening statement, Mistrial, Instructions to jury, Dismissal, Double jeopardy. *Constitutional Law,* Double jeopardy. *Rape.*

At the trial of a criminal case, the judge acted properly within her discretion to strike an improper remark of the prosecutor in his opening statement, to give cautionary instructions to the jury that the opening statements were not evidence, and to deny the defendant's motion for a mistrial based on the opening statement. [10-11]

At the trial of three identically worded indictments alleging rape of a child under sixteen, the judge incorrectly, on her own motion, submitted only one of the three indictments to the jury and, after a guilty verdict was returned, dismissed the remaining two indictments; as a consequence, where there was evidence presented at trial that would have supported separate convictions and would have justified multiple punishments, and where it was not possible to determine what specific act formed the basis of the defendant's conviction, principles of double jeopardy precluded retrial of the defendant on those two indictments. [11-13]

INDICTMENTS found and returned in the Superior Court Department on February 14, 1995.

The cases were tried before *Judith A. Cowin,* J.

*Richard J. Shea* for the defendant.

*Kelly-Anne DeFao,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Robert Riberio was convicted of one count of rape of a child (G. L. c. 265, § 23), two counts of indecent assault and battery on a child under fourteen (G. L. c. 265, § 13B), and one count of indecent assault and battery on a person fourteen or older (G. L. c. 265, § 13H). At Riberio's jury trial, the prosecutor made an opening statement that contrasted the children's vulnerability with the defendant's

predatory conduct. When the prosecutor finished his opening, defense counsel objected, saying that "[i]t was a final argument couched in an opening statement." Refusal by the trial judge to declare a mistrial on this account is the principal ground of appeal. We decide that the judge was warranted in denying the defendant's motion. There is a subsidiary appellate issue brought up by the government in a cross appeal concerning the dismissal of two of what originally had been three rape indictments.

Taking the evidence — much of it in the form of testimony of the complainants — in the light most favorable to the Commonwealth, the jury could find the following. The defendant lived with the complainants, Lisa and Vivian,[1] and their mother, for four years. Lisa testified that when she was six years old, the defendant began to touch her indecently, escalating as she grew older to oral, digital, and vaginal rapes. Vivian, four years older than Lisa, testified that the defendant also subjected her to indecent touchings during the same time period. The children did not disclose their molestation out of fear that such news would upset their mother. A younger brother, who had witnessed one of the assaults, also never spoke out. Finally, in 1994, when she was fifteen years old, Lisa told her mother. That disclosure so upset the mother that she called the police, who promptly arrested the defendant.

1. *Opening statement.* The prosecutor began by describing the defendant as "[t]hat man who was [Lisa's] caretaker [who] sexually molested her for his own sick sexual gratification before she was seven years old. And he is sitting with us in the courtroom today, ladies and gentleman, right there." The defendant objected, and the judge struck the word "sick." In front of the jury, she told the prosecutor she was cautioning him. He acknowledged her reprimand, and continued with his opening. Toward the end of his presentation, the prosecutor said, "[t]he most critical and direct evidence you will hear in this courtroom is from [Lisa] as to what happened to her when she takes the stand. Why would she lie?" And he suggested that, "when you hear from [Lisa], when you hear from [Vivian, her sister], when you hear from the brother . . . , there will be no doubt that this defendant systematically targeted these two young girls for over four years for his own sexual gratification. That he molested [Lisa] in her room dozens and dozens of times under the guise of putting her to bed; the so-called man

---

[1]The children's names are pseudonyms.

of the house." He wound up by telling the jury that, at the end of the case, he would ask for "a verdict based on the evidence, based on what the girls tell you." He then added, "And I suggest to you that that is going to be a verdict of guilty." The defendant objected to the last suggestion, and the judge quickly told the jury that it was struck. At this point, the judge cautioned the jury that opening statements are not evidence, but "simply a statement of what the Commonwealth is expecting to present as evidence."

There followed an extended discussion between the judge, defense counsel, and the prosecutor after the jury had been excused. Defense counsel objected to the entire opening as argumentative.[2] In response, the judge asked defense counsel to identify particular parts of the prosecutor's speech which he found objectionable. At that point, defense counsel could point to nothing in particular. The judge then ordered the court reporter to reproduce a transcript of the prosecutor's opening to allow counsel to determine which portions he wanted struck from the record.

At an extended bench conference the following day, defense counsel identified other parts of the opening which he found argumentative. Of these, the judge agreed to strike only the ill-advised comment that a complaining witness had no reason to lie.[3] Defense counsel insisted, as he had right along, that no curative measure would suffice, and that the prosecutor's opening had inflicted irremediable prejudice which required the judge to declare a mistrial. This the judge was unwilling to do,

---

[2] The "puzzling disparity" between the rule against argumentative opening statements and the practice of lawyers under the rule, and its use as a basis for seeking appellate review, has been thoughtfully analyzed and criticized. Perrin, From O.J. to McVeigh: The Use of Argument in the Opening Statement, 48 Emory L.J. 107 (1999). See Lucas, Opening Statement, 13 U. Haw. L. Rev. 349 (1991).

[3] The remaining portions to which counsel objected are as follows: "Look at this six year old. She liked to play with her dolls. She liked to watch T.V., and she was happy"; "Months before she turned seven, her life changed forever"; "This man was supposed to be taking care of her. . . . Instead he was taking care of himself"; "He was the grown up. He was the adult and she was the little kid"; and "I want you to reach a fair verdict that's fair and just based on the evidence." The judge concluded that, with the three exceptions already noted, the opening as a whole was within proper bounds.

and the trial proceeded to a conclusion.[4]

On appeal, the defendant pitches his argument on the ground that the prosecutor's opening statement emphasized the personal characteristics of the victims, improperly called upon sympathy for them, and caused the jury to stray from neutral assessment of the evidence. See *Commonwealth* v. *Worcester,* 44 Mass. App. Ct. 258, 263-265 (1998). For its part, the government argues that the sympathy ground was not raised below, and that all of the prosecutor's comments were proper when reviewed in context. Given the strength of the case against the defendant and the odious nature of what the sisters described in their testimony, the government contends that a revulsion factor was inherent in the case; to the degree the prosecutor's opening lapsed into argument, it invoked no undue prejudice. Any appeal to sympathy was overcome by the judge's strong and repeated instructions that the jurors base their verdict on the evidence.

We have urged prosecutors to use caution in their opening statements, especially when referring to evidence they plan to introduce that may be more related to evoking sympathy than proving the elements of the alleged crime. See generally *Commonwealth* v. *Gordon,* 422 Mass. 816, 831 (1996); *Commonwealth* v. *Kent K.,* 427 Mass. 754, 759 n.6 (1998). Telling the jury that the victims have no reason to lie is over the line of permissible advocacy, compare *United States* v. *Moreno,* 991 F.2d 943, 947-948 (1st Cir.), cert. denied, 510 U.S. 971 (1993) (reference to "senseless violence" in community when there was no evidence of such was a "patently improper" appeal to emotion), but does not necessarily require a mistrial. See *Commonwealth* v. *Errington,* 390 Mass. 875, 883 (1984), in which the court left open whether an opening statement made in good faith may ever create such prejudice as to entitle a defendant to a mistrial. The declaration of a mistrial is a determination that is within the sound discretion of the trial judge. See *Commonwealth* v. *Cohen,* 412 Mass. 375, 383 (1992); *Com-*

---

[4]Had defense counsel suggested other alternatives, as the judge invited him to do, such as requiring the prosecutor to retract or amend his opening on the following day, see, e.g., *Commonwealth* v. *Gagliardi,* 21 Mass. App. Ct. 439, 444 (1986), or ordering the prosecutor to withdraw the offending statements in his closing argument, see *Commonwealth* v. *Hartford,* 346 Mass. 482, 486 (1963), the judge might have pursued those further remedies. Defense counsel's all or nothing strategy foreclosed any other possibility of a cure.

*monwealth* v. *Cunneen*, 389 Mass. 216, 223-224 (1983). A mistrial "ought to be [declared] with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Commonwealth* v. *Horrigan*, 41 Mass. App. Ct. 337, 340 (1996), quoting from *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824).

In reviewing a claim of improper opening statement, appellate courts view the prosecutor's remarks not only in light of the whole statement, but also in the context of the judge's instructions to the jury. *Commonwealth* v. *Cohen*, 412 Mass. at 382. We think the cautionary instructions that the judge gave in this case were clear and sufficient. See *Commonwealth* v. *Gouveia*, 371 Mass. 566, 572 (1976) (no abuse of discretion in judge's decision to rely on curative instructions rather than declare a mistrial). In both her preliminary and final instructions to the jury, the judge forcefully made the point that the opening statement does not constitute evidence. See *Commonwealth* v. *LePage*, 352 Mass. 403, 409 (1967). In addition, she took prompt and efficient action to prevent a recurrence of the objectionable remarks by making known her concerns after reviewing the transcript, and conducting another colloquy on the subject before closing statements. See *Commonwealth* v. *Hogan*, 426 Mass. 424, 432 (1998). The prosecutor's summation drew no objection or further complaint from defense counsel.

2. *The dismissal of two rape indictments.* At the close of all the evidence, the judge on her own initiative raised concerns with the prosecutor and defense counsel that a conviction on more than one of the three rape indictments would be duplicative because the three rape indictments involving Lisa were indistinguishable.[5] The prosecutor asked the judge to submit all three rape indictments for the jury's consideration. What troubled the judge was that all three were identically worded and covered the same four-year period. An extended discussion ensued in which the prosecutor suggested that a unanimity instruction would ensure that the jury verdict was unanimous on each of the three indictments. As an alternative, the prosecutor offered to amend each indictment to specify a discrete form of the rapes alleged by Lisa (oral, digital, and penile). He assured

_____

[5]All three rape indictments simply alleged that the defendant had raped Lisa when she was under sixteen, between January 1, 1986, and December 31, 1990.

the judge that the grand jury minutes established probable cause for at least these three different forms of rape, and Lisa's trial testimony agreed. In the end, the judge rejected both suggestions and submitted only one of the three indictments of rape to the jury.

After the defendant was sentenced, defense counsel reminded the judge that the two remaining indictments not submitted to the jury were still dangling. Over the prosecutor's objection, defense counsel moved for dismissal of both, and the motion was allowed.

The Commonwealth in its cross appeal argues that the judge committed error as a matter of law and seeks reinstatement of the two indictments. It claims the two indictments were not duplicative, as the judge had suggested during the charge conference. The judge was mistaken. "[I]dentically-worded indictments are not defective if the defendant has the opportunity to obtain, through a bill of particulars, sufficient information to enable him to understand the charges against him and to prepare his defense." *Commonwealth* v. *Hrycenko*, 417 Mass. 309, 313 (1994).[6]

As one might expect in this type of case, Lisa's testimony did not focus on the exact times and places of the many rapes. Even so, there was enough clarity in her testimony for the judge to conclude that the acts relied upon by the Commonwealth as proof of three rapes were not so closely connected as to amount to a single criminal episode. See *Commonwealth* v. *Mamay*, 407 Mass. 412, 418 (1990). Here, the Commonwealth introduced detailed testimony from Lisa which supports separate convictions and would have justified multiple punishments. See *ibid.*

However, our inquiry does not end there. The defendant says that retrial of the two erroneously dismissed indictments is barred by principles of double jeopardy because it is impossible to discern which specific act formed the basis of the defendant's rape conviction. Any of the multiple acts of penetration testified to by Lisa could have been the single proof accepted by the jury. At a retrial of the defendant on the two unresolved indictments, there would be no way of knowing whether the new jury was being asked to consider an alleged act which formed the

---

[6]The record appendix contains docket entries indicating that a motion for a bill of particulars was filed on May 11, 1995, and "agreed to" on May 25, 1995. There is nothing more in the record to show what response or agreement was made by the government.

basis of his conviction in this case. The point is governed — adversely to the Commonwealth — by *Commonwealth* v. *Hrycenko*, 417 Mass. at 316-317. See *Chambers* v. *Commonwealth*, 421 Mass. 49, 53-54 (1995) (citing *Hrycenko*). Double jeopardy principles require that the uncertainty be resolved in the defendant's favor. See *ibid.* The United States Supreme Court has held that the "twice put in jeopardy" language of the Fifth Amendment to the United States Constitution relates to the risk that an accused will be convicted of the same offense for which he already has been tried. See *Price* v. *Georgia*, 398 U.S. 323, 326 (1970); *Luk* v. *Commonwealth*, 421 Mass. 415, 419 (1995). The defendant may not be retried on these indictments.

*Judgments affirmed.*