COMMONWEALTH vs. STEPHEN HELBERG.

No. 07-P-1704.

Essex. September 12, 2008. - November 18, 2008.

Present: COHEN, GREEN, & RUBIN, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Argument by prosecutor. *Witness,* Credibility.

At the trial of indictments charging rape of a child and indecent assault and battery on a child, the prosecutor's closing argument, in which, using evidence presented at trial, she identified and rejected several possible motives for the child victims to lie in response to the defendant's suggestion that there were many reasons why a person would make up charges, did not constitute vouching for the victims based on a suggestion of personal knowledge why they should be believed, and contained no suggestion, implicit or explicit, that the witnesses should be afforded greater credibility by reason of their willingness to come into court and testify. [178-180]

INDICTMENTS found and returned in the Superior Court Department on January 22, 2003.

The cases were tried before *Richard E. Welch, III,* J.

*Eric Brandt,* Committee for Public Counsel Services, for the defendant.

*Kenneth Bresler,* Assistant District Attorney, for the Commonwealth.

GREEN, J. After a jury trial in the Superior Court, the defendant was convicted on six charges of rape of a child and six charges of indecent assault and battery on a child.[1] As often occurs in such cases, the trial rested largely on the credibility of the child victims' testimony. On appeal, the defendant contends that, in closing argument, the prosecutor improperly urged the

---

[1]The trial judge allowed the defendant's motion for a required finding of not guilty as to one additional charge of rape of a child, at the close of the Commonwealth's evidence, and the jury returned a verdict of not guilty as to another such charge.

jury to consider that the children's testimony should be believed because they had no motive to lie. We conclude that the prosecutor's argument was permissible, and affirm the convictions.

*Background.* We summarize the evidence presented to the jury. Sometime in 1995, the defendant moved into the first-floor apartment of a multifamily building in Salem. The victims, a ten year old boy (whom we shall call Jason) and his eleven year old sister (whom we shall call Francine),[2] lived in the second-floor apartment with their mother and their two half-sisters.

One day during the 1995-1996 academic year, while Francine was in the fifth grade, she returned home from school to find the door to her apartment locked. The defendant emerged from his apartment and told Francine that her mother and one of Francine's half-sisters had gone out and would be back soon. He invited Francine into his apartment for ice cream. However, when she followed him to his freezer he said there was no ice cream. The defendant then instructed Francine to follow him to his bedroom, where he would retrieve money from his wallet so that she could go to the store for ice cream. Once in the bedroom, the defendant told her to sit on his bed while he looked for his wallet. The defendant approached the seated victim, took off her pants, and raped her (placing first his tongue and then his penis inside her vagina). Following the rape, the defendant gave the victim money and told her not to tell anyone what had happened.[3]

On a second occasion during the 1995-1996 academic year or early summer immediately following the school year, Francine and a friend had a sleepover in the defendant's apartment. At some point during the night, Francine woke to find the defendant kneeling over her, touching her buttocks. Her friend had gone to the bathroom, having become ill. The defendant rolled Francine over, and began rubbing her stomach and breasts. Francine pretended to be asleep during the encounter. After a short time, Francine's friend returned to the bedroom, and Francine gathered her things and went home to her apartment upstairs.

---

[2]The names are pseudonyms. The victims' stated ages are as of the time of the offenses against them. They were 19 and 20, respectively, at the time of trial.

[3]Sometime later that year, Francine confided in a friend. The friend testified at trial, relating an account by the victim that varied in certain minor respects from the victim's trial testimony.

Jason visited the defendant about three times per week, to "hang out" and watch television. One day, the defendant brought Jason to his bedroom, pulled a rubber glove from his dresser, and asked Jason if he wanted to rub the defendant's penis. The defendant got under the bedcovers, took off his pants and took them out from under the covers. Jason then sat on top of the covers, reached under the covers, and (using the rubber glove and Vaseline) masturbated the defendant to ejaculation. Within a week or two thereafter, the defendant had Jason masturbate him twice more.

On another occasion, the defendant asked Jason if he wanted to see the defendant's penis. When Jason said no, the defendant blindfolded Jason. The defendant removed his pants and pushed his penis toward Jason's mouth, inserted it, and eventually ejaculated in Jason's mouth. The defendant had Jason perform oral sex on him on three or four other occasions, at intervals of a few days to one week between each such occasion. On still another occasion, the defendant asked Jason to perform oral sex but admonished him that he was doing it wrong. The defendant then switched places with Jason and performed oral sex on him.

Toward the end of Jason's fourth grade year, the defendant led Jason into the defendant's bedroom, removed Jason's pants and underwear, inserted his penis into Jason's anus, and ejaculated. The defendant had anal sex with Jason three times.

At trial, the defendant did not testify or call any witnesses. The defendant attacked the prosecution's case through cross-examination of Commonwealth witnesses. In this way he sought to impeach the credibility of the victims' testimony by establishing that the victims could have reported the rapes to a number of people, but did not. The defendant also emphasized the victims' inability to recall certain details of the assaults, such as what the defendant wore during the incidents. In addition, the defendant challenged the thoroughness of the police investigation, as well as Francine's assertion that she sought to avoid further contact with the defendant following the first incident. In closing argument, the defendant's counsel argued (as pertinent to the issue on appeal) as follows:

"Now there are many, many reasons why a person would

make up charges. It is not Mr. Helberg's burden or mine to figure out why a person has. That would be burden shifting. The Commonwealth bears the burden in this case, the burden of proving this case in its entirety.

"Here, Mr. Helberg is saying, "I have no idea why they are saying this, but I know it's not true and I know that the prosecutor has not proven this case, beyond a reasonable doubt."

In her closing, the prosecutor responded as follows:

"The defense wants you to believe that these children are lying, and I want you to ask yourselves, why? Why would these two kids, who have no relationship to this defendant, tell you this story? Why would they lie? They're not related to him. There is certainly no financial incentive."

[Defense objection, overruled.]

"The defendant didn't have any money, so why would they tell this story, and why after so many years, other than he did it? Why? They had no motive."

[Defense objection, overruled.]

"[Jason] hadn't seen the defendant since July of 1996. [Francine] hadn't seen him until, she hadn't seen him since he had moved out in 1999 or 2000. Why the defendant? What would they have to gain? Nothing."[4]

*Discussion.* The defendant contends that the prosecutor's argument was impermissible, suggesting that it sought to bolster the credibility of the accusations with the mere fact that they were made. Alternatively, the defendant contends, the prosecutor should not have been allowed to argue that the victims had no motive to lie. Because the defendant objected, the claim of error is preserved; we accordingly consider whether the argument was improper and, if so, whether the improper argument "constituted prejudicial error." *Commonwealth* v. *Rosario*, 430 Mass. 505,

---

[4]The prosecutor also referred to the testimony of other witnesses, in arguing that certain details recounted in their testimony (albeit not of the assaults themselves) tended to corroborate the testimony of the victims.

515 (1999), quoting from *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993).

Contrary to the defendant's broadest contention, there is no categorical prohibition against suggestion by a prosecutor that a prosecution witness has no motive to lie. *Commonwealth* v. *Smith*, 450 Mass. 395, 408, cert. denied, 129 S. Ct. 202 (2008) (prosecutor may argue that witness had no motive to lie, as "fair response to an attack on the credibility of a government witness"), quoting from *Commonwealth* v. *Chavis*, 415 Mass. 703, 714 n.15 (1993) (prosecutor's argument that witness had no motive to lie did not impermissibly shift burden of proof to defendant). *Commonwealth* v. *Calcagno*, 31 Mass. App. Ct. 25, 31 (1991) (permissible for prosecutor to argue, based on evidence, that child victim of indecent assault and battery had no motive to lie). *Commonwealth* v. *Deloney*, 59 Mass. App. Ct. 47, 53 (2003) (permissible for prosecutor to argue that child rape victims had no motive to fabricate). A prosecutor may not, however, suggest to the jury that a victim's testimony is entitled to greater credibility merely by virtue of her willingness to come into court to testify. See *Commonwealth* v. *Beaudry*, 445 Mass. 577, 586-587 (2005).[5] Similarly, a prosecutor may not suggest that a child sexual abuse victim "wouldn't have that kind of idea in her head unless something like that happened to her." *Commonwealth* v. *Fuller*, 22 Mass. App. Ct. 152, 158 (1986), *S.C.*, 399 Mass. 678 (1987).[6]

In the present case, the prosecutor's argument was made in response to the defendant's suggestion that "there are many, many reasons why a person would make up charges." The argu-

[5]In dictum, the court in *Commonwealth* v. *Beaudry*, 445 Mass. at 587, quotes language from *Commonwealth* v. *Riberio*, 49 Mass. App. Ct. 7, 10 (2000), *S.C.*, 56 Mass. App. Ct. 1111 (2002), that states that "[t]elling the jury that the victims have no reason to lie is over the line of permissible advocacy." Though *Beaudry* involved a closing argument, we note that the language in *Riberio* appeared in the prosecutor's opening statement, rather than (as here) in a closing argument in response to a defense attack on the credibility of the witnesses. Moreover, the Supreme Judicial Court's subsequent opinion in *Commonwealth* v. *Smith*, 450 Mass. at 408, upheld just such an argument.

[6]An argument that a child sexual abuse victim has age-inappropriate knowledge of sexual matters, derived from the alleged incidents of abuse, must be supported by evidence in the record that excludes other possible sources of such knowledge. *Commonwealth* v. *Beaudry*, *supra* at 584.

ment did not constitute vouching, based on a suggestion that the prosecutor held personal knowledge of reasons unknown to the jury why the child witnesses should be believed. Compare *Commonwealth* v. *Deloney, supra.* There was no suggestion, implicit or explicit, that the witnesses should be afforded greater credibility by reason of their willingness to come into court and testify.[7] Contrast *Commonwealth* v. *Beaudry, supra.* And the prosecutor's identification, and rejection, of several possible motives to lie were grounded in the evidence presented at trial.

There was no error.

*Judgments affirmed.*

---

[7]There is no merit to the defendant's suggestion that the prosecutor's argument necessarily invoked the impermissible implication criticized in *Commonwealth* v. *Beaudry,* 445 Mass. at 587, that the victims were credible simply because they gave their testimony in court. The argument sweeps far too broadly. Testimony is made in court in virtually all instances; though the opinion in *Commonwealth* v. *Smith,* 450 Mass. at 408, did not explicitly distinguish *Beaudry,* we note that the problem in *Beaudry* was the prosecutor's attempt to emphasize the victim's willingness to come into court and undergo the rigors of trial. *Commonwealth* v. *Beaudry, supra* at 586-588. In the present case, the prosecutor made no such reference to the victims' willingness to come into court.