COMMONWEALTH *vs.* DENNIS HOLT.

No. 09-P-2032.

Middlesex. June 14, 2010. - September 17, 2010.

Present: Green, Dreben, & Milkey, JJ.

*Practice, Criminal,* Argument by prosecutor, Opening statement, Instructions to jury. *Assault with Intent to Rape. Evidence,* Credibility of witness, Motive.

At the trial of an indictment charging the defendant with assault on a child with intent to rape, in violation of G. L. c. 265, § 24B, various improprieties by the prosecutor in closing argument, exacerbated by the trial judge's attempt at a curative instruction, required reversal of the defendant's conviction, where the prosecutor's and judge's actions had the combined effect of removing from the jury's consideration a central theory of the defense, i.e., that the complainant had fabricated the allegations of attempted penetration in response to the initial determination by the district attorney not to prosecute the case. [720-722] Milkey, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on April 20, 2006.

The case was tried before *Sandra L. Hamlin,* J.

*Steven J. Rappaport* for the defendant.

*Fawn D. Balliro Andersen,* Assistant District Attorney, for the Commonwealth.

GREEN, J. After a Superior Court jury trial, the defendant was convicted of one count of assault on a child with intent to rape, in violation of G. L. c. 265, § 24B. On appeal, he argues that various improprieties by the prosecutor, exacerbated by the trial judge's attempt at a curative instruction, require reversal of his conviction. We agree.

*Background.* When he was twelve years old, John Baker (a pseudonym) met the defendant at a basketball camp where the defendant was a coach. In the ensuing years, John became a

frequent visitor and overnight guest at the defendant's home. John testified that before he turned sixteen, the defendant began giving him massages; as matters progressed, the defendant regularly fondled John's genitalia, and had John fondle his. The defendant was not charged for such conduct because the Commonwealth concluded that the statute of limitations had run by the time John reported the incidents. Instead, the defendant was charged with and convicted of assault with intent to rape a child, a charge that had a longer statute of limitations.[1] That charge was based on John's testimony that, in 1989 or 1990, the defendant pressed his penis forcefully against John's anus, attempting to penetrate. The defendant sought to convince the jury that John fabricated the more serious allegations in order to avoid the problem posed by the statute of limitations on the lesser charge. Consequently, the manner and timing of John's report of the attempted penetration was an important issue at trial.

John first contacted the Chelmsford police to report the sexual assaults in 2005, when he was approximately thirty years old.[2] At that time, John was living in New York, and Officer Jennifer Bellissimo conducted a telephone interview. According to her testimony, John informed her of the inappropriate fondling and the fact that no penetration had occurred. In response to defense counsel's question, "And did [John] elaborate on that at all at that point in time or expand that as to any type of attempted penetration?", she answered, "No." Bellissimo wrote up her interview in a brief report. Approximately one month after receiving a copy of that report, the district attorney's office informed the police and John that it was closing the investigation because the statute of limitations had run.

Subsequently, John's stepfather contacted the district attorney to press for the case to be reopened. The office did so, and John

---

[1]The statute of limitations for assault of a child with intent to rape is fifteen years, while the statute of limitations on indecent assault and battery is six years. See G. L. c. 277, § 63. More than fifteen years had transpired by the time John had reported the conduct for which the defendant was convicted, but it appears that the statute was tolled for a period of time while the defendant was living out of State. In any event, the defendant does not argue that the statute of limitations bars his conviction.

[2]John was born in April, 1975. The precise date of his report to the Chelmsford police is unclear from the record.

was interviewed in person in 2006. Based on his newly-reported allegations of attempted penetration, the Commonwealth brought the current case.

At trial, defense counsel sought to make an issue of the Commonwealth's handling of the investigation, and he initially indicated his desire to subpoena various witnesses from the district attorney's office, including the district attorney. The Commonwealth fought such efforts, arguing that testimony about the internal decision-making process of the district attorney's office was both privileged and irrelevant. The defendant also sought to press the fact that John's stepfather, who succeeded in convincing the district attorney to take another look at the case, was a State legislator. Relatively early in the trial, the judge informed defense counsel that she would not allow him to explore the decision-making process at the district attorney's office, or to get before the jury the fact that the person who intervened on John's behalf was a State legislator.

At a later point in the proceedings, the defendant subpoenaed the assistant district attorney who reopened the case. The Commonwealth moved to quash, and after hearing extensive argument from both sides, the judge ruled that "none of this is going to go before the jury." She explained that "to allow this evidence before the jury would completely misdirect them from their job, which is to decide the credibility of the witnesses, including [John]." Directly after her ruling, the parties reached agreement on a simple stipulation that was read to the jury. That stipulation recounted that Officer Bellissimo's report was telefaxed to the district attorney's office on February 25, 2005, and that on March 8, 2005, the police received a letter from the district attorney's office "advising there would be no further investigation or prosecution due to the statute of limitations."

When asked if he told Officer Bellissimo about the attempted penetration during his telephone interview, John testified that he could not recall. He acknowledged that he had learned — before he was reinterviewed — that the case had been dropped because of statute of limitations problems. However, he denied that such knowledge affected how he approached the second interview, and he specifically denied any knowledge that he would have to provide "more serious accusations" for the case to go forward.

According to John, he believed that he was coming up for an in-person interview to "give the same presentation in 2006 that [he] had given in 2005."

The defendant took the stand, and categorically denied any sexual contact with John. Thus, the case came down to a contest of credibility. In an effort to undermine the credibility of John, defense counsel argued in his closing that John fabricated the specific allegations of attempted penetration after learning that charges of fondling would be barred by the statute of limitations. The prosecutor countered by suggesting that the telephone interview was merely a preliminary step, and that no significance should be drawn from the fact that the allegations of attempted penetration emerged only during the second, more in-depth interview. He embellished that point by arguing forcefully that the district attorney's office "made a mistake" in closing the case after the initial interview. Specifically, he stated:

> "All right. A mistake was made. You heard about the mistake. The district attorney's office, the agency that is entrusted with prosecuting cases alleged by crime victims, the district attorney's office completely dropped the ball.

> "In 2005, this case comes in, and based on the report of the Chelmsford police officer without ever interviewing [John], the district attorney's office closes the investigation.

> ". . .

> "Remember, it was stipulated to you that Chelmsford sent the report on February 25, 2005 . . . and it was two weeks later a letter comes back saying the D.A.'s office is closing this case based on that report. No interview of [John]. The D.A.'s office made a mistake.

> "The D.A.'s office got a phone call from [John's] stepfather. The D.A.'s office brought [John] in for an interview and the full facts came out in that interview. That's the charge before you. The D.A.'s office made a mistake, but it's what [John] says that's before you. And [John] says that there was an assault with intent to rape a child."

Both during and after the prosecutor's closing, defense counsel

vigorously objected to the prosecutor's explanation that "the D.A.'s office made a mistake," and he asked for a mistrial. He also urged the judge, at a minimum, to tell the jury "to disregard that there was a mistake made by the D.A.'s office." The judge denied a mistrial but indicated that she would provide a curative instruction. In her charge to the jury, she instructed as follows:

> "Now, if there is no evidence of something in the case, then you cannot consider it in determining a verdict. You've heard evidence in this case that there was an initial investigation, the case was closed, there was another investigation and now the case is here. There's no evidence before you as to why the investigation was closed and then re-opened so it's irrelevant, you don't speculate about what that is and I strike it from the record to ignore it totally. And focus your attention on what you're supposed to be focusing it on which is determining whether the Commonwealth has proven beyond a reasonable doubt that this defendant committed this crime."

At sidebar, defense counsel expressed his strong dissatisfaction with the judge's curative instruction. He observed that the judge's statement could be taken to suggest that he, rather than the prosecutor, had misspoken during closing argument, and he argued that "the instruction the Court attempted to craft diminishes still further my argument." The judge noted the objection but declined to address the issue again, commenting, "I don't think I want to mention that anymore."

*Discussion.* The defendant contends that the prosecutor's argument that "the D.A.'s office made a mistake" was improper, because it was not based in the evidence, and that it caused him prejudice by undermining a central theory of his defense: that the allegations of attempted penetration were fabricated in response to the initial determination by the district attorney not to prosecute by reason of the statute of limitations. The defendant further suggests that the judge's curative instruction exacerbated the prejudice, by removing that theory entirely from the jury's consideration. Finally, the defendant argues that the prosecutor improperly bolstered John's credibility by arguing, in his opening statement, that John had no motive to lie. We are par-

ticularly troubled by the effect of the judge's attempted curative instruction, and agree that the three claims in combination warrant reversal of the conviction.

As a threshold matter, we observe that, in the eyes of the jury, the prosecutor (as a representative of the district attorney's office) was uniquely capable of supplying an explanation for the reason the case was initially closed, but later reopened. In the absence of evidence in the case to establish the reason for the change in course (largely as a result of the prosecutor's successful efforts to exclude it), the prosecutor's explanation arguably called upon the jury to rely on him to supply facts to which he was privy but they were not.[3] See *Commonwealth* v. *Wilson*, 427 Mass. 336, 352 (1998).[4]

Whatever prejudicial effect the prosecutor's argument might have produced was exacerbated by the judge's attempted curative instruction. The judge's statement that "[t]here's no evidence before you as to why the investigation was closed and then reopened" was simply incorrect; the evidence plainly had established that the district attorney initially closed the investigation because the statute of limitations had run on the acts initially disclosed by the alleged victim. The evidence also established that the district attorney reopened the investigation after John's stepfather contacted her office, and that further inquiry by the district attorney's office into the matter elicited John's report that the defendant had attempted to penetrate John's anus. The

---

[3]We reject the Commonwealth's suggestion that the prosecutor's argument was supported by the evidence. As we have observed, no one from the district attorney's office testified at trial. Officer Bellissimo testified that, under guidelines issued by the district attorney's office, in cases involving children who allege sexual assault, the initial interviewer should encourage the child witness to go to the district attorney's office for an interview. However, she testified that that policy did not apply to adults who asserted that they were abused as children. There was no other evidence concerning the prosecutorial policies or guidelines of the district attorney's office.

[4]*Commonwealth* v. *Guy*, 454 Mass. 440 (2009), cited by the Commonwealth, is not to the contrary. In that case, the police had previously arrested a different man for the same murder and then dropped the charges. In his closing, the prosecutor argued that the Commonwealth "got it right this time," an argument that the Supreme Judicial Court deemed "permissible." *Id.* at 444-445. The Commonwealth's error in arresting the wrong man had been established by the evidence, and the argument that the Commonwealth now had "got it right" amounted to nothing more than marshaling the evidence.

judge instructed the jury not to consider why the case was initially closed and then reopened, and we must presume that the jury followed the judge's instruction. See *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997).

The prosecutor's closing and the judge's instruction therefore had the combined effect of removing from the jury's consideration a central theory of the defense: that John should not be believed because he had embellished his allegations in an effort to have his case reopened.

We finally observe that the prosecutor improperly argued in his opening statement that John had no motive to lie. While arguing, from the evidence, that a witness has no motive to lie is permissible in response to impeachment based on an alleged motive, see *Commonwealth* v. *Helberg*, 73 Mass. App. Ct. 175, 179 (2008), advancing such an argument in an opening statement "is over the line of permissible advocacy." *Commonwealth* v. *Riberio*, 49 Mass. App. Ct. 7, 10 (2000).

The defendant preserved by timely objection each of the claims he asserts on appeal. Each affected the jury's assessment of credibility in a case where credibility was key. We conclude that their combined effect requires reversal of the defendant's conviction. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).[5]

> *Judgment reversed.*
>
> *Verdict set aside.*

MILKEY, J. (dissenting). I agree with much of what the majority has written, and I certainly agree that the prosecutor would have been wise to avoid trying to make such an issue out of the conduct of his office. Nevertheless, I disagree that any missteps amounted to reversible error. I therefore respectfully dissent.

---

[5]For purposes of any retrial, we observe that there is no merit to the defendant's contention that the judge erred in allowing the Commonwealth to substitute John's current wife for his former wife as the first complaint witness. As became evident during the trial, the former wife had no recollection of any complaint by John of sexual assault by the defendant. See *Commonwealth* v. *Murungu*, 450 Mass. 441, 446 (2008).

As a preliminary matter, I note the attenuated nature of the defense of which the defendant claims he was deprived. That defense is based on his assertion that the initial statements of the victim, John Baker (a pseudonym), to Officer Bellissimo differed sharply from the ones he made when reinterviewed.[1] Such a claim appears to rest on a shaky foundation. Although Officer Bellissimo attempted to defend the thoroughness of her questioning, she also acknowledged that the point of the initial interview was "just trying to get to the base of the sexual assault allegations, make sure it was a sexual assault and not just a regular assault." John testified that the in-person interview with the district attorney's office was "much more in-depth" than the telephone interview, and nothing Officer Bellissimo said contradicted that. While she acknowledged that John did not relay allegations of attempted penetration during the telephone interview, there was no evidence that she ever asked him about the subject.[2] In that initial interview, John did get into such embarrassing topics as the reciprocal masturbation that he alleged occurred. That John may have failed to volunteer over the telephone that the defendant had at times pressed his penis against John's anus is hardly as remarkable as the defendant suggests.

Moreover, the defendant did little to develop his fabrication theory during his examination of the witnesses, despite having a fair and adequate opportunity to try to do so. For example, the defendant had the opportunity to cross-examine John about whether he was "coached" by the Commonwealth (or anyone else) on how the statute of limitations problem could be avoided. In conducting that examination, defense counsel chose largely to nibble around the edges of such issues (presumably after deciding that insinuation was preferable to risking adverse responses to more direct questions). In the questions that he did pose to John, the defendant was unable to gain any appreciable traction for his fabrication theory. John's mother testified that

---

[1]In his closing, the defendant argued that John's statements during the telephone interview "contrasted radically" with what he said later.

[2]During his examination of Officer Bellissimo, defense counsel initially asked whether she had "a further discussion with [John] to see if there had been an attempted rape," but then withdrew the question before it was answered.

she did not have any discussions with him about what he should say in his reinterview, and the defendant chose not to call John's stepfather to explore such issues.[3] While the judge refused to let the defendant call the assistant district attorney who reopened the case, the defendant does not challenge that ruling on appeal.

Against this backdrop, I turn to the prosecutor's closing. The evidence established that the district attorney's office initially concluded that the statute of limitations barred a prosecution based on what it gleaned from Officer Bellissimo's telephone interview, without conducting a more detailed in-person interview. I do not view it as improper for the prosecutor to have stated his view that his office should not have done so. To the extent that the prosecutor erred, he did so by pressing the issue to the point that it threatened to distract the jury from their principal job of assessing witness credibility. The judge properly sought to focus the jury's attention on this role in her instructions, and I believe that those instructions adequately addressed any slight problems that the prosecutor's closing argument may have created.

That said, in crafting her curative instruction, the trial judge cut with a knife when a scalpel was appropriate.[4] I agree with the majority that it is this alleged error, not the prosecutor's closing, that raises the most doubt about whether the verdict can stand. In the end, however, I do not think that any error in the judge's instructions requires reversal.

As the jury were repeatedly informed by both counsel, there was uncontested evidence (through both testimony and stipulation) that the investigation was initially closed because of the district attorney's office's conclusion that the statute of limitations had run. In this context, I think it is unlikely that the jury viewed the judge's poorly-phrased statement that there was "no evidence before you as to why the investigation was closed and then reopened" as contradicting the undisputed evidence. And while we are to presume that the jury followed the judge's instructions, I do not view it as likely that the jury interpreted

---

[3]Although the judge made it clear that the stepfather's status as a State legislator was off-limits, she did not bar him as a witness.

[4]The defendant characterizes this error as exacerbating the misstep the prosecutor made in his closing. In my view, the instruction is more accurately characterized as curing the prosecutor's error while creating a new one.

those instructions as compelling them to ignore the defendant's claim that John fabricated his allegations of attempted penetration.[5] I believe it is more likely that the jury interpreted the judge's instructions — as they were presumably intended — as directing them to focus on the witnesses' conduct and statements, not those of the district attorney's office.

Further, as discussed above, the defendant's assertion that John specifically fabricated his claim of attempted penetration as a means of avoiding the statute of limitations was thinly developed, bordering on the theoretical.[6] This case did indeed turn on the credibility of John and of the defendant, something the jury had a full and adequate opportunity to assess when each of these key players took the stand at length. In the end, I think that any error caused by the judge's statements about the course of the proceedings had at most a "very slight effect" on the jury's verdict and that reversal is therefore not required. *Commonwealth* v. *Sanders*, 451 Mass. 290, 298 (2008), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

The majority cites as additional grounds for reversal the prosecutor's opening statements regarding whether John had a motive to lie. I view this as harmless error as well. The central challenge that the defendant faced at trial was that he had an obvious potential reason to lie about whether he assaulted John, while John did not. This was, in colloquial terms, "the elephant in the room." I respectfully disagree with the majority's equating the prosecutor's statement here with the one criticized in *Commonwealth* v. *Riberio*, 49 Mass. App. Ct. 7, 8-10 (2000) (a hypothetical question posed in reference to the victim's account: "Why would she lie?"). Unlike the prosecutor in *Riberio*, the prosecutor here confined his arguments to what he asserted the evidence would show. The prosecutor did not suggest that the jury should trust John because he did, or that he had additional

---

[5] In pertinent part, this is what the judge instructed:

> "There's no evidence before you as to why the investigation was closed and then reopened so it's irrelevant, you don't speculate about what that is and I strike it from the record to ignore it totally."

[6] The majority characterizes the defendant's statute of limitations related argument as "a central theory of his defense." While that characterization may be accurate, it says nothing about the argument's viability.

evidence of John's trustworthiness that would not be before the jury. Moreover, as the majority acknowledges, it is not improper for a prosecutor to argue that only the defendant had a motive to lie where such an argument is grounded in the evidence, and where the credibility of the Commonwealth's witnesses has been placed at issue. See *Commonwealth* v. *Shea*, 401 Mass. 731, 738-739 (1988). See also *Commonwealth* v. *Helberg*, 73 Mass. App. Ct. 175, 179 (2008). Any problem here was principally one of timing: the prosecutor made his statement before the evidence was taken and before the defendant sought to impeach John. Even if this was error, I fail to discern what appreciable prejudice flowed from it. Perhaps the elephant had not yet entered the room, but there was no doubt that it was on its way. In my view, the prosecutor's alluding to this fact did not constitute reversible error.

In sum, while the defendant's trial was certainly less than perfect, I believe that he received the fair trial to which he was entitled. See *Commonwealth* v. *Lodge*, 431 Mass. 461, 476 (2000) ("The defendant is entitled to a fair trial, not a perfect one").