NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-473

COMMONWEALTH

vs.

ZIV Z., a juvenile.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Juvenile Court, the juvenile was adjudicated delinquent of rape, in violation of G. L. c. 265, § 22 (b). He was adjudicated not delinquent as to indecent assault and battery on a child under the age of 14, in violation of G. L. c. 265, § 13B; and rape of a child with force, in violation of G. L. c. 265, § 22A. On appeal, the juvenile argues that the court lacked jurisdiction to proceed with his delinquency adjudication, the trial judge denied his right to a fair and impartial jury, his statement to an investigating police officer that "it happened one time" should have been suppressed as involuntary, and the prosecutor's

closing argument resulted in a substantial risk of a miscarriage of justice. Finding no reversible error, we affirm.

1. _Jurisdictional challenges to the delinquency adjudication_. The juvenile argues that the court had no jurisdiction to proceed with his delinquency adjudication. We disagree.

a. _The age of the juvenile at the time of the offense_. The juvenile maintains that the court lacked jurisdiction to proceed with the rape charge because he was under the age of twelve at the time of the offense and therefore could not be adjudicated delinquent under G. L. c. 119, § 52. Where there is "a genuine factual dispute" whether a jurisdictional element of an offense is met, "that issue is to be submitted to the jury in the form of an instruction." Commonwealth v. Combs, 480 Mass. 55, 61 (2018). Here, the juvenile's age at the time of the offense was properly identified as "a question of fact to be settled by proof" and "entrusted to the deliberative process of the jury." Id., quoting Commonwealth v. Travis, 408 Mass. 1, 8 (1990). At trial, the Commonwealth presented sufficient evidence to support a finding that the juvenile was at least twelve years old at the time of the offense.[1] The judge

---

[1] This evidence included testimony by the victim, who was five years younger than the juvenile, that the assault on which the rape charge was based occurred when the victim was at least seven or eight years old.

instructed the jury that "the Commonwealth must also prove to you beyond a reasonable doubt that the particular offense took place when the juvenile . . . was at least 12 years old."  In response to questions on a special verdict form, the jury found the juvenile guilty of rape and that he was "at least 12 years old at the time of this offense."  Accordingly, the court did not lack jurisdiction.

b.  <u>The absence of an indictment</u>.  The juvenile contends that he was denied his right under Article 12 of the Massachusetts Declaration of Rights to a grand jury indictment.  However, the Commonwealth properly proceeded against the juvenile by way of a delinquency complaint.  The twin goals of the juvenile justice system "are borne out by the existence of dual tracks within the juvenile justice system, with varying attendant rights and protections; complaints against individuals label them 'delinquents' and place them on one track, while indictments label their subjects 'youthful offenders' and place them on another."  <u>Commonwealth</u> v. <u>Mogelinski</u>, 466 Mass. 627, 641 (2013), <u>S</u>.<u>C</u>., 473 Mass. 164 (2015).  General Laws c. 119, § 54, "reflects these two legislative aims and, through its use of disjunctive language in many places, evinces an intent that a case proceed along one of these tracks, rather than straddle the line between the two."  <u>Mogelinski</u>, <u>supra</u>.  Because the Commonwealth proceeded by way of a delinquency complaint, the

3

juvenile was "subject to essentially rehabilitative penalties and remedies."  Id.  He was not subject to "any punishment as is provided by law" that would entitle him to an indictment under G. L. c. 263, § 4, or under any other constitutional or statutory authority.  See G. L. c. 119, § 52 (defining "punishment as is provided by law" as "any sentence which may be imposed upon an adult by a justice of the district court or superior court").  As a result, we discern no error.

c.  The prosecutor's clarification of the rape charge. Prior to trial, some confusion arose as to the nature of the rape charge of which the juvenile was ultimately found delinquent.  The complaint application described the charge as follows:  "(Def.) told victim that he would beat him up if he did not touch his penis, victim was scared."  In the delinquency complaint, count two charged the juvenile with rape and recited the elements under G. L. c. 265, § 22 (b), without referring to any facts.  The juvenile did not move to dismiss the complaint or for a bill of particulars because, as counsel told the judge, "the [a]pplication for [c]omplaint and the police report is clear as to what act[s] constitute" the charged offenses and "what time frame is accurate."  At the same time, the juvenile filed a motion in limine to exclude evidence of other bad acts, which sought "a clarification or a consensus as to what the charges are that we're going forward on."  After the prosecutor

4

stated that the indecent assault and battery count pertained to the victim being told to touch the juvenile's penis, the rape count pertained to "anal rape," and the rape of a child with force count pertained to "oral rape," defense counsel pointed out "that's not what the Application for Complaint says," and the judge stated "so this is why we do bills of particulars."

The next morning, the prosecutor informed the judge that, after reviewing the victim's interview and consulting with defense counsel, she determined that "the rape would actually be . . . the oral rape, and the rape with force would be the anal rape." The judge stated that she would revise the jury verdict form accordingly. Defense counsel did not object or request further clarification. The jury ultimately found the juvenile delinquent based on, as stated in the verdict form, "the charge of Rape, to wit: penetration of the complaining witness' mouth with the Juvenile defendant's penis."

As the Commonwealth has acknowledged, the prosecutor should have accurately stated the factual basis for the charges earlier in the proceeding. Nevertheless, the juvenile is not entitled to an acquittal. The juvenile argues that the prosecutor's "amendment of substance" as to the rape charge violated Article 12 of the Massachusetts Declaration of Rights. As discussed, the juvenile was not indicted and, as a juvenile facing a trial for delinquency, was not entitled to a grand jury indictment.

5

Furthermore, the record does not show any prejudice resulting from the timing of the prosecutor's clarification. The facts pertinent to the rape charge were contained in the police report and provided to defense counsel in advance of trial. The prosecutor clarified the charge before opening statements, the juvenile did not object to the clarification or request additional information or time to prepare, the evidence at trial supported the charge as clarified, and the basis for the charge was correct on the verdict form.

2. Jury selection. a. The number of peremptory challenges. Because the Commonwealth proceeded against the juvenile by way of a delinquency complaint, he was entitled to trial by a jury of six and two peremptory challenges. G. L. c. 119, § 56 (e); Mass. R. Crim. P. 20 (c) (1), 378 Mass. 890 (1979). The judge, appropriately exercising her discretion, allowed the juvenile two additional peremptory challenges, for a total of four. The juvenile argues that because the offense of rape is punishable by life imprisonment, he was entitled to twelve peremptory challenges under Rule 20 (c) (1). That is incorrect. The rule provides for an entitlement to twelve challenges only "[u]pon the trial of an indictment for a crime punishable by imprisonment for life." Mass. R. Crim. P. 20 (c) (1). Because the juvenile was not subject to such a trial, that provision does not apply.

b.  Juror no. 17.  The juvenile contends that the judge abused her discretion by refusing to excuse juror no. 17 for cause.  That decision is preserved for our review.[2]  "A trial judge is accorded considerable discretion in the jury selection process."  Commonwealth v. Clark, 446 Mass. 620, 629-630 (2006).  Accordingly, a judge's finding of impartiality "will not be overturned on appeal unless the defendant makes a clear showing of abuse of discretion or that the finding was clearly erroneous."  Commonwealth v. Emerson, 430 Mass. 378, 384 (1999), cert. denied, 529 U.S. 1030 (2000).  See Commonwealth v. Ferguson, 425 Mass. 349, 352-353 (1997).  We discern no abuse of discretion or error here.

In response to the judge's questions, juror no. 17 stated that she had a child close in age to the victim and "It's one of my worst nightmares" when a child is harmed.  She further described the case as "a very sad situation for all the [parties] involved," and noted that "the other person" involved

---

[2] The juvenile sought to strike jurors no. 10, 17, and 24 for cause.  After the judge denied each challenge, the juvenile used a peremptory challenge to strike juror no. 17, but did not use a peremptory challenge on jurors no. 10 or 24, and exhausted his peremptory challenges before the jury were seated.  See Commonwealth v. Kennedy, 478 Mass. 804, 815 (2018) (decision preserved for review when "a defendant uses a peremptory challenge to excuse a juror that the judge refused to excuse for cause and the defendant is later 'forced to accept a juror whom he otherwise would have challenged peremptorily'" [citation omitted]).

7

(i.e., the juvenile) "was also a child." After the judge asked whether she could "keep an open mind" and decide the case "based solely on the evidence," juror no. 17 responded, "yes, I think so." After defense counsel asked whether having a young child would make it difficult to hear the allegations, she stated that she imagined that "it's going to be difficult for everybody," and she "almost cried when [she] heard what this was about." Finally, the judge asked juror no. 17 whether she could "listen to the facts and evidence presented at the trial, and decide them based solely on what you decide to be credible and true, and the laws I instruct you, or do you think you'd be swayed by sympathy, or empathy?" She responded, "I have feelings, but I'm always going to try my best. I feel I want to be part of a solution, especially [inaudible] children. But it's difficult. I'm -- I'm saying yes, but I don't know." The judge concluded that juror no. 17 should not be excused for cause because, "when asked multiple times if she could base her decision based on the testimony in the courtroom and the law as I apply it to her, she said, 'Yes.' She said she would do her best. And that's all we can ask with this." The judge further noted that the juror's expressions of discomfort were not one-sided and that she expressed concern about the juvenile and the victim. Although the juvenile contends that certain of juror no. 17's responses were not unequivocal statements of impartiality, the trial judge

8

was in the best position to determine and accept them to be credible assertions of impartiality. See Commonwealth v. Colton, 477 Mass. 1, 17 (2017); Commonwealth v. Leahy, 445 Mass. 481, 495-496 & n.13 (2005). As such, we see no error in the judge concluding that the juror was impartial.

c. Juror no. 24. The juvenile argues that the judge unreasonably limited defense counsel's ability to ask juror no. 24 questions. We disagree. The scope of voir dire "is in the sound discretion of the trial judge and will be upheld absent a clear showing of abuse of discretion" (citation omitted). Commonwealth v. Dabney, 478 Mass. 839, 848, cert. denied, 586 U.S. 846 (2018). See Commonwealth v. Espinal, 482 Mass. 190, 194-195 (2019). Here, juror no. 24 answered, "I do," after the judge asked: "So, obviously, this case has some allegations that would be troubling to a lot of people. Do you think you'd be able to put your sympathies aside and make your decisions based solely on the evidence that was . . . presented to you?" Defense counsel then asked the judge if she could follow up with a question beginning, "If you're feeling sympathetic or emotional towards the victim, and felt the Commonwealth hadn't proved their case beyond a reasonable doubt, would you [inaudible]." The judge declined to allow the question because juror no. 24 already stated that "she could follow the law and the instructions that the Court would give her" and not take

9

sympathy into account. Because juror no. 24's previous response was clear and unequivocal, the judge did not abuse her discretion in denying a follow-up question on the same issue. See Dabney, supra at 851-852.

3. _The admission of the juvenile's statement to the police officer_. Prior to trial, the juvenile moved to suppress three statements he made after the victim disclosed the alleged abuse to his mother, the juvenile's sister. In the first statement, the juvenile said that "it happened once" after the sister woke him up and aggressively confronted him about the allegations. The second statement occurred after a police officer arrived at the house. As the officer interviewed the sister in the living room, the juvenile walked in and spontaneously stated that "it happened one time." The juvenile made the third statement in a formal interview at the Lawrence police station. Following an evidentiary hearing, the motion judge suppressed the first and third statements, but declined to suppress the second statement, concluding that it was voluntarily made. The juvenile contends that this was erroneous, and the officer should not have been allowed to testify about the second statement at trial.

"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.'" Commonwealth v. Fisher, 492 Mass. 823,

10

837-838 (2023), quoting Commonwealth v. Medina, 485 Mass. 296, 299-300 (2020). The Commonwealth may not use a defendant's statement at trial unless it has proven beyond a reasonable doubt that the statement was made voluntarily. Commonwealth v. Cartright, 478 Mass. 273, 287 (2017). "This is not an area of the law that is governed by bright-line rules." Commonwealth v. Tremblay, 460 Mass. 199, 210 (2011). Rather, we look to "the totality of the circumstances surrounding the making of the statement [to determine whether] the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act" (citation omitted). Commonwealth v. Lopez, 485 Mass. 471, 482 (2020).

The juvenile argues that because his first statement to his sister was found to be involuntary, his second statement to the officer should have also been suppressed. "In the case of a statement after an involuntary confession, '[t]he question of whether those confessions subsequently given are themselves voluntary depends on the inferences as to the continuing effect of the coercive practices which may fairly be drawn from the surrounding circumstances.'" Commonwealth v. Hand, 104 Mass. App. Ct. 815, 822-823 (2024), quoting Lyons v. Oklahoma, 322 U.S. 596, 602 (1944). "The question is whether the 'effect of earlier abuse . . . dominated the mind of the accused to such an extent that the later confession is involuntary.'" Hand, supra,

11

quoting Lyons, supra at 603. Here, the motion judge suppressed the juvenile's first statement because, inter alia, at the time it was made, the juvenile had just been woken up, was not properly medicated, and was being yelled at by his sister. The judge concluded that the juvenile's second statement was voluntary because he made it spontaneously in a noncustodial setting and he was not being interrogated by the officer or anyone else. As the officer was interviewing the sister in a different room, the juvenile walked in and made the second statement because, he testified at the suppression hearing, "everybody was just ignoring [him]," and he "felt like [he] just had to step up" and tell his side of the story. After the officer warned the juvenile to stop talking, he responded, "I got to talk. Like, I have my rights and stuff."[3] These circumstances established a "break in the stream of events" that sufficiently insulated the juvenile's second statement "from the effect of all that went before." Hand, supra, quoting Darwin v. Connecticut, 391 U.S. 346, 349 (1968). Accordingly, it was not error to deny the juvenile's motion to suppress as to that statement.

4. The prosecutor's closing argument. The juvenile argues that certain statements in the prosecutor's closing argument

_____

[3] At oral argument, the juvenile acknowledged that the officer did not act in a coercive or improper manner.

12

were improper.  In her closing argument, counsel for the juvenile attacked the victim's credibility, asserting that his testimony was vague and inconsistent, his delay in reporting the sexual assaults undermined his credibility, and he alleged the abuse because he wanted attention from his mother.  In response, the prosecutor stated,

> "Well, you have a 13-year-old boy who -- if this was for attention -- just had to sit in front of seven men, one female, and talk about how an individual not only made him perform sexual acts on him, how he was violated, how he got a penis in his butt, how he was forced to perform oral sex -- he just had to admit to seven men that he doesn't know that he's never met before -- sit here and tell you that he didn't feel as much of a man as a result.

> "Is that where a 13-year-old boy wants to be?  In this courthouse, telling you about some of the most traumatic experiences of his life.  Would he do that for attention? Does that make sense that he is only here, alleging this incident against his uncle, because he didn't feel like he got enough attention in the house?"

Because the juvenile did not object to these statements at trial, we review to determine whether they resulted in a substantial risk of a miscarriage of justice.  See Commonwealth v. Sanders, 101 Mass. App. Ct. 503, 511 (2022).  An error during closing argument creates a substantial risk of a miscarriage of justice "if we have a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Silvelo, 96 Mass. App. Ct. 85, 91 (2019), quoting Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016).

13

Considered "in the context of the entire argument, the judge's instructions to the jury, and the evidence at trial," we conclude that the prosecutor's statements did not give rise to a substantial risk of a miscarriage of justice. Commonwealth v. Ruiz, 442 Mass. 826, 835 (2004). We disagree with the juvenile's contention that the statements were intended to exploit anti-gay prejudice or, alternatively, "call upon the mostly male jurors and their sense of manhood to identify with [the victim's] plight." The victim testified that reporting the abuse to his mother made him feel embarrassed and "like, less of a man," and it was not improper for the prosecutor to refer to that testimony. The prosecutor was also entitled to respond to the argument that the victim claimed abuse to gain attention. As the "sole judges of credibility," the jurors are entitled to consider whether a witness has a motive to lie, Commonwealth v. Richardson, 423 Mass. 180, 185 (1996), and a prosecutor may argue in closing that a witness had no motive to lie in response to the defense's claims to the contrary, so long as such an argument is based on evidence. Commonwealth v. Holt, 77 Mass. App. Ct. 716, 722 (2010), citing Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 179 (2008).

While it is true that a prosecutor may not "suggest to the jury that a victim's testimony is entitled to greater credibility merely by virtue of [his] willingness to come into

14

court to testify," Helberg, 73 Mass. App. Ct. at 179, here, the prosecutor's summation was in direct response to the juvenile's claim that the victim was lying because he was seeking attention.  In that light, we are confident that this reference did not result in a substantial risk of a miscarriage of justice.  First, the prosecutor's statements were primarily directed at rebutting the juvenile's argument that the victim had lied to gain attention.  Second, the reference to the juvenile's testifying before the jury was brief and "not so rousing or inflammatory as to sweep the jury beyond rational examination of the evidence."  Commonwealth v. Lassiter, 80 Mass. App. Ct. 125, 132 (2011).  Third, the judge's instructions that the jurors "may not permit sympathy to affect [their] verdicts" and that "the [c]losing [a]rguments of the lawyers are not a substitute for the evidence" minimized any possibility that the statements would improperly prejudice the jury.  See Commonwealth v. Andrade, 468 Mass. 543, 549 (2014) ("The jury are presumed to follow the judge's instructions").  Lastly, that the defendant was adjudicated delinquent on only one charge suggests that the jury followed those instructions.  See Commonwealth v. Doyle, 73 Mass. App. Ct. 304, 308 (2008) ("[A]cquittals tend to confirm that the jurors did not allow their verdicts to be based on sympathy").

15

<u>Adjudication of delinquency affirmed</u>.

By the Court (Desmond, Walsh & Toone, JJ.[4]),

Clerk

Entered:  December 16, 2024.

---

[4] The panelists are listed in order of seniority.